[Cite as *State v. Jones*, 2015-Ohio-3506.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 26333 |
| | : | |
| v. | : | Trial Court Case No. 2013-CR-3596 |
| | : | |
| ROBERT L. JONES, JR. | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 28th day of August, 2015.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by KIRSTEN A. BRANDT, Atty. Reg. No. 0070162, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee

WILLIAM O. CASS, JR., Atty. Reg. No. 0034517, 135 West Dorothy Lane, Suite 209, Dayton, Ohio 45429
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

**{¶ 1}** Robert L. Jones, Jr. appeals from his conviction and sentence following a guilty plea to charges of aggravated murder, aggravated robbery, intimidation of a crime victim, attempted breaking and entering, and firearm specifications.

**{¶ 2}** Jones advances two assignments of error challenging his aggregate sentence of 36 years to life in prison. First, he contends the trial court erred in failing to consider his youth and its attendant characteristics before imposing sentence. Second, he claims his sentence violates the constitutional prohibition against cruel and unusual punishment.

**{¶ 3}** The record reflects that Jones and others had attempted to break into the Ohio Loan Company on September 13, 2013. (PSI report at 3). Their plan was to shoot a door lock with a handgun, enter the business, and steal guns. (*Id.*). When the attempted entry failed, Jones became "disgusted." While walking away, he encountered 75-year-old Take Gangloff at a bus stop. Jones shot her in the head when she resisted his attempt to rob her and tried to flee. (*Id.* at 2-3). He later bragged about the incident, telling a friend it was "funny when the 'old lady dropped.'"[1] (*Id.* at 3). Two weeks after murdering Gangloff, Jones attempted to rob a Shell gas station with a sawed-off shotgun. Jones and a companion fled when the clerk advised them he was behind bullet-proof glass and called the police. (*Id.*). Jones was 17 years old when he committed these offenses. He turned 18 just days before his sentencing hearing.

---

[1] In its appellate brief, the State provides additional details about Jones' shooting of Gangloff. In support, the State cites a sentencing memorandum it filed below. (Appellee's brief at 2). According to the sentencing memorandum, Jones bragged to friends that he had "just bodied" the victim and described himself as "a pure savage." The sentencing memorandum, however, provides no citation to support these or other details, which are not found in the PSI report or anywhere else in the record before us. (Doc. #53 at 4).

{¶ 4} At sentencing, the trial court imposed prison terms of life with parole eligibility after 30 years for aggravated murder, 11 years for aggravated robbery, and 3 years for intimidation of a crime victim. It also imposed separate 3-year sentences for the firearm specifications (one for each incident) and a 180-day jail term for the attempted breaking and entering. The trial court ordered the sentences for aggravated murder, aggravated robbery, and attempted breaking and entering to be served concurrently. It ordered the sentences for the two firearm specifications to be served consecutive to one another and consecutive to the other sentences. The result was an aggregate sentence of 36 years to life in prison. (Doc. #60).

{¶ 5} In his first assignment of error, Jones contends the trial court erroneously failed to consider his youth and its attendant characteristics before imposing his sentence. He claims the trial court was obligated to do so under *Miller v. Alabama*, __ U.S. __, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012).

{¶ 6} We find this assignment of error unpersuasive. Contrary to Jones' argument, the record reflects that the trial court *did* take into account his youth and its attendant characteristics. Before imposing sentence, the trial court stated:

> * * * First of all, the Court has struggled with fashioning an appropriate sentence. We use the term remorse. From the State's perspective, they advocate that the Defendant is not truly remorseful. [Defense counsel] would assure me that he is. And the reality of that all is that I just don't know. I can't know that. The only person that knows the level of his remorse and how genuine it is or is not is Mr. Jones and as so many people have stood before me to express that, he has[,] which is appropriate

that he does. But I can't know whether that remorse is genuine or not.

*The Court believes in notions of redemption and resurrection and the Court believes that those things can occur in the here and now. And not just in an afterlife. And so the Court is mindful of that as well.*

*The Court is mindful that the Defendant hardly had an idyllic childhood. And the Court is mindful that he has a father whose [sic] still serving time for himself committing a murder. The Court can only imagine what sort of forces that bring[s] to bear in a young life.*

*The Court is mindful that the Defendant is youthful and that we aren't any of us as wise at 17 or 18 as we might be 20, 30 years down the road. I think that's a given. The Court is mindful of the significant emotional and developmental intellectual challenges that Mr. Fenway has brought to the Court's attention.*

But the Court would also be remiss if I did not say that in trying to wrap my head around this matter and in trying to fashion a sentence that's appropriate, the Court cannot help but note that the death of the 75-year-old woman who waited on a bus alone in the darkness, her life was taken and for what? For absolutely no purpose that I can think of. She had absolutely no contact or familiarity with Mr. Jones nor he with her. And the Court just has this notion that she was there much as a swimmer on a beach is there when a predator happens by.

It's just very, very difficult for the Court to come to grips with this situation. The Court is also mindful that within a matter of days of this

incident, as heinous as this was, the Defendant was embroiled in yet another incident which was the aggravated robbery of a Shell station where those present were threatened with a sawed off shotgun.

(Emphasis added) (Tr. at 32-33).

{¶ 7} The foregoing remarks demonstrate that the trial court explicitly considered Jones' relative youth and its attendant characteristics. In fact, his youth appears likely to have been a mitigating factor that persuaded the trial court not to impose a sentence of life in prison without parole for the aggravated murder (an option it had under R.C. 2929.03(A)) and not to impose consecutive sentences on the other substantive counts. Although Jones notes that the PSI report did not specifically identify his youth as a mitigating factor in its analysis of the statutory seriousness and recidivism factors, the trial court appears to have recognized it as such.

{¶ 8} Jones' reliance on *Miller v. Alabama* is misplaced in any event. In *Miller*, the U.S. Supreme Court invalidated mandatory sentencing schemes that require juveniles convicted of homicide to "receive lifetime incarceration without possibility of parole, regardless of their age and age-related characteristics and the nature of their crimes[.]" *Miller* at 2475. The Ohio Supreme Court recently applied *Miller* in *State v. Long*, 138 Ohio St.3d 478, 2014-Ohio-849, 8 N.E.3d 890, another case cited by Jones. In *Long*, the defendant received a sentence of life in prison without parole for an aggravated murder he committed at age 17. Citing *Miller*, the Ohio Supreme Court held that "a court, in exercising its discretion under R.C. 2929.03(A), must separately consider the youth of a juvenile offender as a mitigating factor before imposing a sentence of life without parole[.]" *Long* at ¶ 1. In the present case, of course, the trial court *did not* impose a

sentence of life without parole. Therefore, neither *Miller* nor *Long* directly applies here.

{¶ 9} We recognize, however, that *Long* arguably might be read more expansively to mean that an offender's youth always must be considered as a mitigating factor. At one point, the majority purported to hold without qualification "that youth is a mitigating factor for a court to consider when sentencing a juvenile." *Long* at ¶ 19. Even if this broad statement has vitality outside the context of that case,[2] the record persuades us that the trial court did consider Jones' youth in mitigation of the sentence it imposed. As noted above, the trial court addressed his age in the context of recognizing the fact that juveniles are not as wise or mature as adults and the fact that he may have been influenced by the circumstances of a difficult childhood. The trial court's reference to "notions of redemption and resurrection" also suggest it believed he might be capable of rehabilitation. For these reasons, we believe the trial court complied with *Long* to the extent it had any applicability here. Accordingly, the first assignment of error is overruled.

{¶ 10} In his second assignment of error, Jones claims his aggregate sentence of 36 years to life in prison constitutes cruel and unusual punishment in violation of the Eighth Amendment. In support, he reasons that this sentence, which makes him eligible for parole at age 54, is tantamount to a sentence of life without parole. He then relies on *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2 825 (2010), for the proposition that the Eighth Amendment prohibits sentences of life without parole for juvenile offenders who commit non-homicide offenses. Although Jones was convicted of

---

[2] *But see State v. Hammond*, 8th Dist. Cuyahoga No. 100656, 2014-Ohio-4673, ¶ 21 ("Although Hammond acknowledges that *Long* applies to juveniles who receive a sentence of life without parole, he urges us to extend the rationale to any sentence involving a juvenile. Hammond, however, fails to offer any authority in support of extending the holding of *Long* to the instant case.").

a homicide offense, he asserts that the same reasoning applies here and that he must have a "meaningful opportunity" for release. Finally, Jones cites statistical evidence for the proposition that his life expectancy in prison will be reduced to age 54 or less. Therefore, he reasons that he effectively has received a life sentence in violation of the Eighth Amendment.

{¶ 11} We are not persuaded by Jones' argument. *Graham* has no applicability here for two reasons: (1) Jones was not convicted of a non-homicide offense, and (2) he did not receive a sentence of life without parole. With regard to juvenile homicide offenders such as Jones, the only sentences that have been found to violate the Eighth Amendment are death sentences and *mandatory* sentences of life without parole. *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005); *Miller v. Alabama*, *supra*. In *Long*, the Ohio Supreme Court recognized that Ohio's sentencing scheme in R.C. 2929.03(A), under which the trial court had discretion to impose either (1) life without parole or (2) life with parole eligibility after serving a definite period of 20, 25, or 30 years, "does not fall afoul" of *Miller's* reading of the Eighth Amendment "because the sentence of life without parole is discretionary." *Long* at ¶ 19; *see also Miller* at 2469 (recognizing that discretionary sentences of life without parole for juveniles are not prohibited by the Eighth Amendment).

{¶ 12} Here Jones did not even receive a discretionary sentence of life without parole. Although the trial court could have imposed such a sentence, it elected to impose a sentence of life *with* parole eligibility after 30 years. Except for Jones' two firearm-specification sentences, which were required by law to be served consecutively, the trial court also ordered all other sentences to be served concurrently. Even if we

accept Jones' statistical evidence that the average life expectancy for a person in his position is 54 years or less, we find no authority for the proposition that his sentence violates the Eighth Amendment. Eighth Amendment violations involve punishments that under the circumstances would shock the conscience of any reasonable person. *State v. Mayberry*, 2d Dist. Montgomery No. 26025, 2014-Ohio-4706, ¶ 38. We see nothing conscience-shocking about Jones' sentence, which was within the statutory range and was not even the maximum sentence he could have received. Accordingly, the second assignment of error is overruled.

{¶ 13} The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . .

FROELICH, P.J., and WELBAUM, J., concur.

Copies mailed to:

Mathias H. Heck
Kirsten A. Brandt
William O. Cass, Jr.
Hon. Steven K. Dankof