[Cite as *State v. Zimmerman*, 2016-Ohio-1475.]

### IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case Nos. 2015-CA-62 & |
| | : | 2015-CA-63 |
| v. | : | |
| | : | Trial Court Case Nos. 2015-CR-70 & |
| RAYMOND ZIMMERMAN | : | 2015-CR-137 |
| | : | |
| *Defendant-Appellant* | : | (Criminal Appeals from |
| | : | Common Pleas Court) |

. . . . . . . . . . .

### O P I N I O N

Rendered on the ___8th___ day of ____April____, 2016.

. . . . . . . . . .

RYAN A. SAUNDERS, Atty. Reg. No. 0091678, Assistant Clark County Prosecuting Attorney, 50 East Columbia Street, Fourth Floor, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellee

BROOKE M. BURNS, Atty. Reg. No. 0080256, Assistant State Public Defender, 250 East Broad Street, Suite 1400, Columbus, Ohio 43215
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} In these cases, Defendant-Appellant, Raymond Zimmerman, appeals from his convictions and sentences on one count of Murder, with a gun specification (Clark County Common Pleas Court Case No. 2015-CR-70), and one count of Aggravated

Robbery (Clark County Common Pleas Court Case No. 2015-CR-137). In support of his appeal, Zimmerman contends that the trial court violated his right to due process by sentencing him to a mandatory prison term of 15 years to life, because the non-rebuttable sentencing presumption in R.C. 2929.02(B)(1) cannot lawfully be applied to juvenile offenders. Zimmerman further contends that this automatic and mandatory term violates his right to be free from cruel and unusual punishment. Finally, Zimmerman contends that his trial counsel was ineffective because he failed to object to imposition of the automatic and mandatory term of imprisonment.

{¶ 2} On a plain error basis, we conclude that R.C. 2929.02(B)(1) may be lawfully applied to juvenile offenders without violating due process, and that the mandatory term imposed by the statute does not violate Zimmerman's right to be free from cruel and unusual punishment. We further conclude that Zimmerman's trial counsel did not commit ineffective assistance by failing to raise these arguments in the trial court. Even if the arguments had been timely raised, they are without merit. Accordingly, the judgment of the trial court will be affirmed.

I. Facts and Course of Proceedings

{¶ 3} On January 12, 2015, the body of William Henson was discovered in a residence on Haddix Road in Clark County. When the police arrived, the residence had been ransacked, and there were signs of a struggle. Henson died as the result of multiple gunshot wounds. Based on information from statements at the scene, two suspects were identified. Raymond Zimmerman, Henson's nephew, was one of the suspects. The police subsequently discovered information leading to Zimmerman's

location and executed a search warrant at an address on Wallace Drive in Fairborn, Ohio, on January 15, 2015. They located and arrested Zimmerman at that address.

{¶ 4} On January 23, 2015, Zimmerman escaped from detention while in juvenile custody. The following morning, a 70-year-old woman discovered Zimmerman in her home. Zimmerman allegedly forced her, at knife point, to drive him to Fairborn, Ohio. He was arrested in Fairborn later that day.

{¶ 5} At the time of these crimes, Zimmerman was 17 years old. The juvenile court held probable cause hearings on February 5, 2015, and concluded that there was probable cause that Zimmerman had committed Murder, a felony of the first degree on January 12, 2015, in violation of R.C. 2903.02(A), and that transfer to the general division of the common pleas court was mandatory under R.C. 2152.12.

{¶ 6} On February 9, 2015, Zimmerman was indicted in Clark County Common Pleas Court Case No. 2015-CR-070, on one count of Aggravated Murder, one count of Murder, three counts of Felony Murder, one count of Felonious Assault, one count of Aggravated Robbery, one count of Aggravated Burglary, and one count of Theft of a Firearm. All the counts carried firearm specifications.

{¶ 7} Subsequently, on March 16, 2015, Zimmerman was indicted in Clark County Common Pleas Court Case No. 2015-CR-137, on one count of Aggravated Burglary, one Count of Kidnapping, and one count of Theft, with an elderly person specification. These charges related to the incident that occurred on the morning of January 24, 2015.

{¶ 8} Counsel was appointed for Zimmerman, and on May 11, 2015, Zimmerman entered guilty pleas in both cases, pursuant to an agreed plea bargain. In exchange for a guilty plea to Count Two of the indictment (Murder, with a gun specification) in Case

No. 2015-CR-070, the State agreed to dismiss the remaining counts in the indictment, and Zimmerman would be sentenced to a mandatory term of life in prison, with a possibility of parole after 15 years, plus a three-year sentence on the gun specification.

{¶ 9} In Case No. 2015-CR-137, in exchange for Zimmerman's guilty plea to Aggravated Burglary, the State agreed to dismiss the remaining counts of the indictment. In addition, the parties agreed to a ten-year sentence, and that the sentence would run consecutive to the sentence in 2015-CR-070. The total sentence, thus, would be life in prison, with parole eligibility after 28 years.

{¶ 10} After engaging in a Crim.R. 11 colloquy with Zimmerman, the trial court accepted his guilty pleas, and sentenced him the same day to life in prison, with parole eligibility after 28 years. Zimmerman timely appeals from his convictions and sentences.

## II. Alleged Violation of Due Process

{¶ 11} Zimmerman's First Assignment of Error states that:

The Clark County Court of Common Pleas Violated Raymond Zimmerman's Right to Due Process When It Sentenced Him to a Mandatory Prison Term of 15 Years to Life Because the Irrebuttable Presumption in R.C. 2929.02(B)(1) Cannot Be Lawfully Applied to Juvenile Offenders. Fourteenth Amendment to the U.S. Constitution; Ohio Constitution, Article I, Section 16.

{¶ 12} Under this assignment of error, Zimmerman argues that Ohio's mandatory sentencing requirements for homicide offenders violate due process by imposing presumptions in sentencing that cannot be rebutted, and improperly result in juvenile

offenders being treated the same as culpable adult offenders.

{¶ 13} R.C. 2929.02(B)(1) states, in pertinent part, that "whoever is convicted of or pleads guilty to murder in violation of section 2903.02 of the Revised Code shall be imprisoned for an indefinite term of fifteen years to life." Thus, the statute imposes a specific sentence, no matter what a defendant's status may be. As Zimmerman maintains, this statute prevents trial courts from taking a defendant's youth into consideration during sentencing. However, Zimmerman forfeited arguments about the statute's constitutionality by failing to raise them in the trial court. *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15.

{¶ 14} In *Quarterman*, the defendant challenged the constitutionality of Ohio's mandatory bindover provisions. The Supreme Court of Ohio held, however, that the defendant had forfeited the error because he failed to raise unconstitutionality in the trial court. *Id.* at ¶ 8 and 15, citing *State v. Awan*, 22 Ohio St.3d 120, 122, 489 N.E.2d 277 (1986). (Other citations omitted.) In this regard, the court acknowledged it had discretion to consider plain error, but noted that in such a situation, a defendant must show "that but for a plain or obvious error, the outcome of the proceeding would have been otherwise, and reversal must be necessary to correct a manifest miscarriage of justice." *Id.* at ¶ 16, citing *State v. Davis*, 127 Ohio St.3d 268, 2010-Ohio-5706, 939 N.E.2d 147, ¶ 29. Ultimately, the court concluded that the defendant had failed to adequately raise even plain error, and refused to consider the issue the defendant had presented. *Id.* at ¶ 17-21.

{¶ 15} Exercising our discretion to consider plain error, we conclude, after reviewing the issues, that the trial court did not commit plain error, and reversal is not

required to correct a manifest miscarriage of justice.

{¶ 16} In arguing that R.C. 2929.02(B)(1) is unconstitutional, Zimmerman relies on the fact that children are not as mature and responsible as adults. He also relies on decisions of the United States Supreme Court that have drawn "bright-line" distinctions between punishments for youthful offenders, even where they are transferred to adult court.

{¶ 17} In *Miller v. Alabama*, ___ U.S. ___, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), the United States Supreme Court discussed a series of prior cases in which the court had recognized that "children are constitutionally different from adults for purposes of sentencing." *Id.* at 2464, citing *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), and *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). The court stressed its prior explanation that "[b]ecause juveniles have diminished culpability and greater prospects for reform, * * * 'they are less deserving of the most severe punishments.' " *Id.,* quoting *Graham,* 560 U.S. at 68. In addition, the court emphasized that "the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes." *Miller,* 132 S.Ct. at 2465.

{¶ 18} *Miller* was a homicide case in which the defendant had been sentenced to life imprisonment without parole. *Id.* at 2457. In view of the factors discussed above, the United States Supreme Court stated that:

Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents

taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys. *See, e.g., Graham*, 560 U.S., at — —, 130 S.Ct., at 2032 ("[T]he features that distinguish juveniles from adults also put them at a significant disadvantage in criminal proceedings"); *J.D.B. v. North Carolina*, 564 U.S. ——, ——, 131 S.Ct. 2394, 2400–2401, 180 L.Ed.2d 310 (2011) (discussing children's responses to interrogation). And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it.

*Miller,* 132 S.Ct. at 2468. As a result, the court held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Id.* at 2469.

{¶ 19} In a subsequent decision, the Supreme Court of Ohio followed *Miller* and held that "[a] court, in exercising its discretion under R.C. 2929.03(A), must separately consider the youth of a juvenile offender as a mitigating factor before imposing a sentence of life without parole." *State v. Long,* 138 Ohio St.3d 478, 2014-Ohio-849, 8 N.E.3d 890, paragraph one of the syllabus.

**{¶ 20}** After *Miller* and *Long* had been decided, we considered whether a trial court erred in failing to take a defendant's youth into account when imposing a sentence for Aggravated Murder under R.C. 2929.03(A). *State v. Jones*, 2d Dist. Montgomery No. 26333, 2015-Ohio-3506, ¶ 1-2. We held that *Miller* and *Long* did not apply, because the trial court did not impose a life sentence without the possibility of parole. *Id.* at ¶ 8. We went on to note that even if *Long* could arguably be read more broadly to require evaluation of youth as a mitigating factor, the trial court had, in fact, considered factors pertaining to the defendant's youth. *Id.* at ¶ 9.

**{¶ 21}** In a subsequent case, we concluded that a trial court did not err in sentencing a youthful defendant, even when the court specifically stated during the sentencing hearing that it would not consider the defendant's youth. *State v. Hawkins*, 2d Dist. Clark No. 2015-CA-16, 2015-Ohio-5383, ¶ 8. The defendant in *Hawkins* pled guilty to Aggravated Murder and was sentenced to life in prison with parole eligibility after he had served 30 years for the murder charge and three years for a firearm specification. *Id.* at ¶ 5-8. He was 17 years old when he committed the crime. *Id.* at ¶ 2.

**{¶ 22}** In arguing that the trial court erred by failing to consider his youth, the defendant relied on *Long* and *Miller*. *Id.* at ¶ 11. We rejected his argument, however. First, we observed that we had recently discussed both *Long* and *Miller* in *Jones*. *Id.* at ¶ 12, citing *Jones* at ¶ 8. We then noted that *Jones* had also cited to *State v. Hammond*, 8th Dist. Cuyahoga No. 100656, 2014-Ohio-4673, in which "the Eighth District Court of Appeals refused to extend the holding in *Long* to every sentence involving a juvenile offender." *Id.* at ¶ 13, citing *Jones* at ¶ 9, fn.2. We agreed with this approach, stating that:

As the record reveals, like the juvenile offenders in *Jones* and *Hammond*, Hawkins did not receive a life sentence without parole. Instead, he received a sentence of life in prison with the possibility of parole after serving 33 years in prison. In turn, the concerns in *Long* with respect to culpability and the possibility of rehabilitation do not exist in this case, as it is still possible for Hawkins to become amenable to rehabilitation as he matures into adulthood and to potentially be released on parole after serving 33 years in prison. Therefore, because there is no authority extending the holding in *Long* to every prison sentence imposed on a juvenile offender, and because the concerns discussed in *Long* do not exist here, we do not find that the trial court erred when it decided not to consider Hawkins's youth at sentencing.

*Hawkins*, 2d Dist. Clark No. 2015-CA-16, 2015-Ohio-5383, ¶ 16.

{¶ 23} In the case before us, the trial court did not refuse to consider Zimmerman's youth. Instead, the court indicated at the plea hearing that the only possible sentence the court could impose for Murder was a mandatory sentence of life in prison with parole eligibility after 15 years. Transcript of Plea and Disposition Hearing, p. 8. The court assured that Zimmerman was aware of this before the court accepted his guilty plea. *Id.* at pp. 8-9.

{¶ 24} In view of our prior authority, we conclude that R.C. 2929.02(B)(1) is not unconstitutional. The decisions in *Long* and *Miller* do not apply, because the case before us does not involve a sentence of life in prison without parole. Zimmerman will be eligible for parole, as was noted, when he has served a prison term of 28 years.

{¶ 25} We also recently rejected a defendant's argument that mandatory sentences imposed on juveniles in adult court are invalid as a violation of the Eighth Amendment. *State v. Anderson*, 2d Dist. Montgomery No. 26525, 2016-Ohio-135, ¶ 34.

{¶ 26} In *Anderson*, the defendant was not convicted of homicide, but received what appeared to be mandatory sentences for aggravated robbery and kidnapping convictions, due to the fact that a firearm was involved. *Id.* at ¶ 36. In this regard, we commented that:

> Even accepting, arguendo, that Ohio law compelled the trial court to impose punishment of at least three years in prison for Anderson's substantive first-degree felony counts and a consecutive three-year term for the merged firearm specifications, we see no violation of the Eighth Amendment to the U.S. Constitution or Article I, Section 9 of the Ohio Constitution. Contrary to the implication of Anderson's appellate brief, not all "mandatory" punishment imposed on juveniles in adult court is cruel and unusual. In *State v. Long*, 138 Ohio St.3d 478, 2014-Ohio-849, 8 N.E.3d 890, for example, the Ohio Supreme Court considered whether Ohio's felony sentencing scheme constituted cruel and unusual punishment as applied to a juvenile convicted of aggravated murder in adult court and sentenced to life without parole. In *Long*, the defendant faced a mandatory minimum sentence of life with parole eligibility after twenty years. *Long* at ¶ 5. In the course of its ruling, the Ohio Supreme Court recognized that *Miller* banned *mandatory life-without-parole* sentences on juveniles tried in adult court. *Id.* at ¶ 8. Nowhere in *Long*, however, did the court suggest

that * * * the Eighth Amendment or Article I, Section 9 prohibit *any and all* mandatory sentences on juveniles tried in adult court. *See also State v. Reidenbach*, 5th Dist. Coshocton No. 2014CA0019, 2015-Ohio-2915 (rejecting argument by juvenile tried in adult court that imposition of punitive and mandatory Tier III sex-offender requirements on him constituted cruel and unusual punishment).

(Emphasis sic.) *Anderson* at ¶ 37.

{¶ 27} As a final matter, our review of cases decided by the Supreme Court of Ohio and the United States Supreme Court after *Miller* shows no indication that the holding in *Miller* has been extended to situations like the present.

{¶ 28} Accordingly, since there is no plain error, and no manifest miscarriage of justice requiring reversal, the First Assignment of Error is overruled.

### III. Alleged Cruel and Unusual Punishment

{¶ 29} Zimmerman's Second Assignment of Error states that:

The Clark County Court of Common Pleas Violated Raymond Zimmerman's Right to Be Free From Cruel and Unusual Punishments When It Imposed an Automatic and Mandatory Prison Term of 15 Years to Life, in Accordance with R.C. 2929.02(B)(1). Eighth Amendment to the U.S. Constitution; Ohio Constitution, Article I, Section 9; *Miller v. Alabama*, ___ U.S. ___, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012).

{¶ 30} Under this assignment of error, Zimmerman makes essentially the same arguments that he asserted in support of the alleged due process violation. He again

refers to *Miller* and *Long*, and the idea that R.C. 2929.02(B)(1) inappropriately precludes trial courts from taking a juvenile's youth into consideration for purposes of sentencing.

**{¶ 31}** Again, Zimmerman did not raise this issue in the trial court, and we will review the issue only for plain error. *Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, at ¶ 15-16. For the reasons already explained in connection with the First Assignment of Error, we find no plain error nor any manifest miscarriage of justice. *Id.* at ¶ 16.

**{¶ 32}** "[T]he bulk of Eighth Amendment jurisprudence concerns not whether a particular punishment is barbaric, but whether it is disproportionate to the crime. Central to the Constitution's prohibition against cruel and unusual punishment is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.' " *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, ¶ 25, quoting *Weems v. United States*, 217 U.S. 349, 367, 30 S.Ct. 544, 54 L.Ed. 793 (1910).

**{¶ 33}** "Proportionality review falls within two general classifications: the first involves 'challenges to the length of term-of-years sentences given all the circumstances in a particular case.' The second, which until recently was applied only in capital cases, involves 'cases in which the Court implements the proportionality standard by certain categorical restrictions.' " *Id.* at ¶ 26, quoting *Graham*, 560 U.S. at 59, 130 S.Ct. 2011, 176 L.Ed.2d 825. Zimmerman urges analysis under the latter category, which requires courts to engage in a two-step process: "first, the court considers whether there is a national consensus against the sentencing practice at issue, and second, the court determines 'in the exercise of its own independent judgment whether the punishment in question violates the Constitution.' " *Id.* at ¶ 29, quoting *Graham* at 60.

{¶ 34} In this regard, Zimmerman focuses on the "growing consensus against subjecting children to adult treatment" and the fact that even where cases involving children are decided in adult court, a defendant's youth is a consideration in sentencing.

{¶ 35} As was noted, we have previously rejected the contention that mandatory sentences for juveniles who are tried as adults violates the Eighth Amendment prohibition against cruel and unusual punishment. *Anderson*, 2d Dist. Montgomery No. 26525, 2016-Ohio-135, ¶ 34-37. In *Jones,* we also rejected the argument of the defendant (who turned 18 just before sentencing) that his 36 years-to-life sentence for Aggravated Murder and other charges was cruel and unusual punishment. *Jones*, 2d Dist. Montgomery No. 26333, 2015-Ohio-3506, at ¶ 10-12. The defendant in *Jones* relied on *Graham*, and argued that his sentence, which made him eligible for parole at 54 years old, equated to a life sentence without parole. He claimed that he must be provided a meaningful opportunity for release. *Jones* at ¶ 10. The defendant also argued that statistically, his life expectancy in prison was 54 years or less. *Id.*

{¶ 36} We rejected these arguments, stressing that *Graham* was inapplicable because the defendant in *Jones* had not been convicted of a non-homicide offense and did not receive a life sentence without parole. *Id.* at ¶ 11. In this regard, we emphasized that concerning "juvenile homicide offenders such as Jones, the only sentences that have been found to violate the Eighth Amendment are death sentences and mandatory sentences of life without parole." (Citations omitted.) *Id.* The same reasoning applies here, and there was neither plain error nor a manifest miscarriage of justice in the sentence imposed on Zimmerman. In fact, Zimmerman's sentence is considerably less than the sentence we affirmed in *Jones.* Accordingly, the Second Assignment of Error

is overruled.

### IV. Alleged Ineffective Assistance of Counsel

{¶ 37} Zimmerman's Third Assignment of Error states that:

Raymond Zimmerman Was Denied Effective Assistance of Counsel,

in Violation of the Sixth and Fourteenth Amendments to the United States

Constitution and Article I, Section 10 of the Ohio Constitution.

{¶ 38} Under this assignment of error, Zimmerman contends that his trial counsel was ineffective because he failed to object to the unconstitutionality of R.C. 2929.02(B)(1).

{¶ 39} Ineffective assistance of trial counsel claims are reviewed under the analysis established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Based on these cases, trial attorneys are entitled to a strong presumption that their conduct falls within a wide range of reasonable assistance. *Strickland*, 466 U.S. at 688. "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." (Citations omitted.) *Bradley,* 42 Ohio St.3d at 137, paragraph two of the syllabus. "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Id.* at paragraph three of the syllabus.

{¶ 40} Trial counsel was not ineffective in the case before us. Even if Zimmerman's counsel had raised due process and cruel and unusual punishment arguments in the trial court, Zimmerman would not be entitled to relief. For the reasons previously mentioned, R.C. 2929.02(B)(1) does not violate either due process or prohibitions against cruel and unusual punishment. The Third Assignment, therefore, is without merit and is overruled.


V. Conclusion

{¶ 41} All of Zimmerman's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, J., concurs.

DONOVAN, P.J., dissenting:

{¶ 42} I dissent. After *Miller*, legislative action affirmatively illustrates its significance. *Miller* is not limited to barring mandatory life-without-parole sentences but also affects discretionary sentencing schemes by requiring the consideration of youth as a mitigating factor. After *Miller*, several state legislatures have amended their applicable statutes to require the consideration of youth and its attendant characteristics and circumstances as a mitigating factor. *See* Florida Stat. Ann. § 921.1401; Mich. Comp. Laws § 769.25; Neb. Rev. Stat. § 28-105.02; Nev. Rev. Stat. Ann. § 176.025 (as amended, 2015 Nevada Laws Ch. 152 (AB 267)); 18 Pa. Cons. Stat. Ann. § 1102.1; Wash. Rev. Code § 10.95.030; W. Va. Code Ann. § 61-11-23.

{¶ 43} Accordingly, I would reverse and remand for re-sentencing for the reasons

articulated in my dissent in *Hawkins* which addressed *Miller* and *Long* in detail.

. . . . . . . . . .

Copies mailed to:


Ryan A. Saunders
Brooke M. Burns
Hon. Douglas M. Rastatter