[Cite as *In re B.W.*, 2017-Ohio-9220.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. 17 MA 0071 |
| | ) | |
| B.W. | ) | OPINION |
| | ) | |
| | ) | |
| | ) | |

CHARACTER OF PROCEEDINGS:    Civil Appeal from the Court of Common
Pleas, Juvenile Division of Mahoning
County, Ohio
Case No. 15 JA 978

JUDGMENT:    Reversed and Remanded.

APPEARANCES:

For Plaintiff-Appellant:    Atty. Paul J. Gains
Mahoning County Prosecutor
Atty. Ralph M. Rivera
Assistant Prosecuting Attorney
21 West Boardman St., 6th Floor
Youngstown, Ohio 44503

For Defendant-Appellee:    Atty. Rhonda G. Santha
6401 State Route 534
West Farmington, Ohio 44491

JUDGES:

Hon. Carol Ann Robb
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated: December 21, 2017

ROBB, P.J.

{¶1} The State of Ohio appeals the decision of the Mahoning County Common Pleas Court, Juvenile Division, dismissing the murder complaint filed against Juvenile-Appellee B.W. As he was 16 years old, Appellee was subject to mandatory transfer to the general division if the juvenile court found probable cause to believe he committed the offense. The probable cause hearing was held jointly with the co-defendant. The juvenile court found the state failed to establish probable cause to believe Appellee committed murder. In evaluating probable cause in the case against Appellee, the juvenile court refused to consider the detective's testimony on what the co-defendant told him and the co-defendant's video statement. For the following reasons, we conclude the state presented sufficient credible evidence of probable cause. The juvenile court's judgment dismissing the complaint is reversed, and the case is remanded with instructions to issue a mandatory transfer order.

## STATEMENT OF THE CASE

{¶2} On July 31, 2015, a delinquency complaint was filed in juvenile court against Appellee alleging he purposely caused the death of Jarell Brown on July 26, 2015, which constitutes the offense of murder in violation of R.C. 2903.02. A firearm specification was attached to the charge. As the charge was murder and Appellee was sixteen at the time of the offense, he was subject to mandatory transfer to the general division of the common pleas court if there was probable cause to believe he committed the act charged. In accordance, the state filed a motion to relinquish jurisdiction asking the court to conduct a transfer hearing. The probable cause hearing commenced on various dates due to a witness's failure to appear and refusal to testify, even after a material witness warrant was issued and immunity was granted. The hearings proceeded jointly with co-defendant J.J. who was also charged with murder for the victim's death. J.J. was fourteen years old on the day of the offense.

{¶3} The medical examiner testified he observed the body of the eighteen-year-old victim at the scene. The body was lying in a puddle of water on Indianola

Avenue approximately 100 yards west of Market Street. (Tr. 10). The victim suffered a single gunshot wound; the bullet entered the victim's upper back and exited his neck. (Tr. 11). The shot was not fired by a shotgun or an assault rifle. (Tr. 22). The medical examiner opined the victim could have been able to run for up to "a minute or so" upon suffering the wound, after which he would have been incapacitated until he died three to four minutes later. (Tr. 19-20).

{¶4} Detective Spotleson testified the victim's body was found on the side of the road at 27 West Indianola Avenue in front of a fabrication business. (Tr. 52, 58). A man driving down the road saw the body and called the police. (Tr. 52). Firemen from the nearby fire station walked to the scene to report they heard three shots just before the police dispatch. (Tr. 53). Upon noticing undisturbed gravel near the body, the detective concluded the victim had not been thrown from a vehicle. (Tr. 52). The victim's brother told the detective the victim would have been carrying money and a 9mm firearm. (Tr. 54). The police found $30 in the victim's wallet but recovered no gun from the scene. (Tr. 55).

{¶5} The detective explained how he discovered where to look for video evidence showing the victim's movements. A witness reported he saw three males enter a beverage store on Market Street and then saw them walk a few blocks north to Hylda Avenue. One of the three individuals was wearing a red sweatshirt, which was the color of the sweatshirt the victim was wearing. (Tr. 55-56). This witness heard what he perceived as fireworks and soon noticed police at the scene on Indianola.

{¶6} The detective retraced the reported path and collected videos along the way, which established his timeline. (St. Ex. 4). He created photographic still shots from the videos. (St. Ex. 5-15). A 9:50 p.m. video from the front of a jewelry store facing Market Street showed a person (said to be Appellee) walking south on Market Street; he was wearing dark pants, a white t-shirt, and white shoes. (St. Ex. 5). A 9:56 p.m. video from the same business showed two people (said to be J.J. and the victim) walking south on Market Street: one was wearing dark shorts or pants, a

long-sleeved red shirt or jacket, and white shoes; and one was wearing white shorts, a dark long-sleeved shirt or jacket, and white shoes. (St. Ex. 6).

{¶7} A video from a beverage store further south on Market Street showed Appellee, J.J., and the victim entering the store together and buying items. Appellee purchased a drink and the victim purchased cigar products. (St. Ex. 4, 10:02-10:04 p.m., Chan. 1,4). A 10:02 p.m. still shot from this video showed J.J. and the victim entering the business. (St. Ex. 7-8); (Tr. 61-62). A 10:03 p.m. still shot showed Appellee with the victim and J.J. during the purchase of the products. (St. Ex. 9-11); (Tr. 63). The three individuals were clearly portrayed in this evidence, and juvenile officers were able to provide the detective with their names. (Tr. 70-71). The detective identified Appellee and J.J. in court. (Tr. 71). The beverage store video showed: Appellee wearing dark pants or jeans, a white T-shirt, and white shoes; J.J. wearing white shorts, a dark sweatshirt, and white shoes; and the victim wearing a red sweatshirt, dark shorts, and white shoes. (St. Ex. 9-11). Their attire matched that worn by the individuals walking in the direction of the beverage store in the minutes-earlier jewelry store video.

{¶8} At 10:08 p.m., the video from the front of the jewelry store showed three individuals walking north on Market Street (from the direction of the beverage store). (St. Ex. 12); (Tr. 65). The attire of these individuals matched that worn by Appellee, J.J., and the victim five minutes earlier. A 10:09 p.m. video from the side of the jewelry store showed the three individuals had turned left off of Market Street and onto West Hylda Avenue. (St. Ex. 13); (Tr. 65-66). In this video, the back of the heads and hair of the individuals can be seen in addition to the clothing (for purposes of comparison with the beverage store video). The victim was walking in front with Appellee and J.J. following him. Just prior to walking out of camera range, the three individuals moved from the sidewalk to the street as if starting to cross West Hylda Avenue. (St. Ex. 13-14); (Tr. 66-67).

{¶9} Crossing West Hylda Avenue from their position one would encounter an alley connecting West Hylda to Indianola Avenue. The alley runs along the side of the fabrication business, and it outlets where the victim's body was found. (Tr. 66-

67). In this alley, the detective found a 9mm shell casing. (Tr. 56). Near the shell casing, the detective found a cigar and cigar wrappers, whose serial numbers matched those sold to the victim at the beverage store. (Tr. 56-57, 119). The beverage store tracked the sale of the products on the cash register and found it matched the time on the video showing Appellee, J.J., and the victim at the cash register. (Tr. 57).

{¶10} A video was also recovered from the fabrication business showing a male who "appears to be the victim" running down the alley toward Indianola. (St. Ex. 15); (Tr. 57, 68). The timestamp on the video was 10:08 p.m., but the detective ascertained the clock on that camera was set seven or eight minutes behind, meaning it portrayed the victim running at 10:15 or 10:16 p.m. (Tr. 68-69). In concluding this portrayed the last moments of the victim's life, the detective noted the police were called and officers arrived within minutes of the shooting. (Tr. 112, 128). The evidence suggested to the detective that Appellee and J.J. were with the victim in the alley in the minutes before his death.

{¶11} The detective also testified about his interview of J.J. occurring on August 4, 2015, which was preserved on video. (St. Ex. 2-3). J.J. was read his rights and signed a *Miranda* rights form. (St. Ex. 16). The detective testified J.J. said he, the victim, and Appellee went to a friend's house on Princeton Avenue but this friend asked them to leave because he had issues with the victim; this friend was the material witness who refused to testify. (Tr. 76-77). J.J. initially told the detective the victim left the house in a blue car. (Tr. 77). When the detective mentioned he saw J.J. with the victim in a video from the beverage store, J.J. changed the story to say: a car pulled up after they left the store; the victim said he was going to rob the "weed man"; the victim produced a gun but was shot in the back of the head by the car's passenger; and the victim ran one way while J.J. ran the opposite way. (Tr. 78).

{¶12} The detective told J.J. there was no car in the jewelry store's video, and J.J. then declared: he, Appellee, and the victim left the store, walked north on Market Street to Hylda, and turned into the alley; Appellee relieved himself in the alley; the victim handed his gun to Appellee so the victim could roll a joint; Appellee told J.J. he

was going to shoot the victim because he was a snitch; Appellee walked up behind the victim and fired the gun at him; J.J. believed the shot hit the victim in the head; Appellee tried to shoot the victim again but the gun did not fire; Appellee pulled J.J. by the back of the shirt, and they ran south down the alley back toward Hylda; the victim ran north up the alley toward Indianola; and they eventually went back to their friend's house, where Appellee brandished a 9mm and bragged about shooting the victim. (Tr. 79-81). J.J. made all three statements within the first 30 minutes of his interview, repeating the final story after a break. (St. Ex. 2).

{¶13} There was no objection to this testimony as it was presented. The final day of the probable cause hearing was held on March 15, 2017, nearly a year after this testimony.[1] When a request for a continuance was denied, the state rested pending admission of its exhibits. At this point, Appellee objected to the exhibits containing J.J.'s statement and the signed *Miranda* rights form. (Tr. 212). It was argued J.J.'s statements, although admissible against J.J. as his own statements, were not admissible against Appellee. (Tr. 212-213). The state disagreed, and the court held a discussion off the record.

{¶14} The juvenile court thereafter sustained Appellee's objection so J.J.'s statement would not be considered as evidence of probable cause in the case against Appellee but would be considered in the case against J.J. (Tr. 215- 217). In closing, Appellee's attorney argued that, without the statements of J.J. or the friend previously held as a material witness, there was no evidence Appellee committed murder.

---

[1] As aforementioned, the probable cause hearing commenced on various dates due to issues with a material witness, who fled after he was granted immunity and released on the material witness warrant. The witness was interviewed by the detective on video; after initially saying the victim left his house in a blue car, this witness subsequently said he heard Appellee make incriminating statements at his house before and after the shooting. (St. Ex. 17-18). Appellee objected to the use of the witness's out-of-court statement, arguing there was no corroboration to show truthworthiness under the statement against interest hearsay exception. The juvenile court found this statement was barred by the confrontation clause and would not satisfy the declaration against interest hearsay exception in Evid.R. 804(B)(3) as there were no corroborating circumstances indicating truthworthiness. (9/26/16 J.E.) The court suggested it could not use J.J.'s statement as corroboration. (Tr. 154-157).

**{¶15}** The juvenile court agreed and dismissed the charge against Appellee.[2] The court said the dismissal was without prejudice as the complaint could be refiled if the state found more evidence or secured the testimony of the missing witness. (Tr. 233). In a March 16, 2017 judgment entry, the juvenile court memorialized its decision to dismiss the complaint without prejudice and found "the State failed to carry its burden of proof and did not establish probable cause to believe that the Subject Child committed an act that would be a felony, if committed by an adult."[3] The state filed a timely notice of appeal from the dismissal of the complaint, and briefing was completed on October 20, 2017.

**{¶16}** In reviewing appealability, the state cites R.C. 2945.67(A), which provides: "A prosecuting attorney * * * may appeal as a matter of right any decision of a trial court in a criminal case, or any decision of a juvenile court in a delinquency case, which decision grants a motion to dismiss all or any part of an indictment, complaint, or information * * *." The state may appeal as a matter of right from the dismissal of an indictment regardless of whether the dismissal is with or without prejudice. *State v. Craig*, 116 Ohio St.3d 135, 2007-Ohio-5752, 876 N.E.2d 957, ¶ 16. "[T]he order of a juvenile court denying a motion for mandatory bindover bars the state from prosecuting a juvenile offender as an adult for a criminal offense. It therefore is the functional equivalent of a dismissal of a criminal indictment and constitutes a final order from which the state may appeal as a matter of right." *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, ¶ 1. *See also In re S.J.*, 106 Ohio St.3d 11, 2005-Ohio-3215, 829 N.E.2d 1207, ¶ 12-13 (juvenile court's sua sponte dismissal of one murder charge and amendment of another to voluntary manslaughter, after finding a lack of probable cause for murder, was equivalent to granting a motion to dismiss under R.C. 2945.67(A) from which the state could

---

[2] In J.J.'s case, the court found probable cause (on the basis of complicity) and set the matter for an amenability hearing, as his younger age made bindover discretionary. (Tr. 233).

[3] The entry mistakenly stated, "Exhibits 1 through 16 were excluded on the within matter." There was no objection to St. Ex. 1 (the coroner's packet introduced during the medical examiner's testimony) or St. Ex. 4-15 (the video evidence). As to these exhibits, the court stated, "[t]he state has provided copies of the originals that are now accepted and admitted into evidence." (Tr. 215, 217).

appeal as of right). Here, Appellee moved the juvenile court to dismiss the case against him at the probable cause hearing. (Tr. 226). The court found the state failed to present evidence of probable cause and dismissed the complaint, making the decision appealable by the state as a matter of right under R.C. 2945.67(A).

<u>GENERAL LAW ON PROBABLE CAUSE HEARING FOR BINDOVER</u>

**{¶17}** Juv.R. 30(B) provides: "Mandatory Transfer. In any proceeding in which transfer of a case for criminal prosecution is required by statute upon a finding of probable cause, the order of transfer shall be entered upon a finding of probable cause." The pertinent portion of the statute provides a juvenile court "shall transfer" a case after a complaint is filed alleging the child committed murder if the child was sixteen or seventeen years of age at the time of the act charged "and there is probable cause to believe that the child committed the act charged." R.C. 2152.12(A)(1)(a)(i).[4] The hearing held upon a request for mandatory transfer of a juvenile has been called a mandatory bindover hearing, a mandatory transfer hearing, a probable cause hearing, and a preliminary hearing. Juv.R. 30(A) provides: "Preliminary Hearing. In any proceeding where the court considers the transfer of a case for criminal prosecution, the court shall hold a preliminary hearing to determine if there is probable cause to believe that the child committed the act alleged and that the act would be an offense if committed by an adult."

**{¶18}** At this preliminary hearing, the juvenile court's function is not to determine whether the juvenile is guilty of the charge but is to determine whether there is *probable cause to believe* the juvenile is guilty. *State v. Iacona*, 93 Ohio St.3d 83, 93, 752 N.E.2d 937 (2001). A probable cause hearing held before a juvenile court's transfer to adult court is a preliminary, non-adjudicatory proceeding as it does not determine whether the juvenile was delinquent. *See, e.g., Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975), fn. 18 (a simple hearing to determine if there is probable cause for the offense charged in order to transfer a

---

[4] In a discretionary transfer case where the court finds probable cause, the case must be continued for an amenability hearing after a full investigation. Juv.R. 30(C). If the court decides to retain jurisdiction after the amenability hearing, it shall set the proceedings for the hearing "on the merits." Juv.R. 30(E).

juvenile to another court to be tried as an adult is not an adjudication; if the bindover hearing required proof of guilt, it would be adjudicatory and further criminal proceedings could not thereafter occur due to double jeopardy); *State v. Carmichael*, 35 Ohio St.2d 1, 7-8, 298 N.E.2d 568 (1973) (amenability decision where hearing proceeded simultaneously with probable cause hearing in a pre-rules case).

**{¶19}** In general, a preliminary hearing prevents the continued detention of a person when there is no evidence of his connection to an offense; the purpose "is not to hear all the evidence and determine the guilt or innocence of the accused but rather to determine whether sufficient evidence exists to warrant binding the accused over to the grand jury, where, after a more thorough investigation of the evidence, it is then determined whether a formal charge shall be made against the accused." *State v. Minamyer*, 12 Ohio St.2d 67, 69, 232 N.E.2d 401 (1967). Likewise, "a mandatory-bindover hearing in the juvenile court is ancillary to grand jury proceedings and to adult criminal prosecution." *A.J.S.*, 120 Ohio St.3d 185 at ¶ 23.

**{¶20}** To establish probable cause, the state has the burden to provide "sufficient credible evidence" on the elements to warrant going forward with the charge. *A.J.S.*, 120 Ohio St.3d 185 at ¶ 46, 52; *Iacona*, 93 Ohio St.3d at 93. The state must produce evidence that raises "more than a mere suspicion of guilt" but need not produce evidence proving guilt beyond a reasonable doubt. *A.J.S.*, 120 Ohio St.3d 185 at ¶ 41, quoting *Iacona*, 93 Ohio St.3d at 93. Underlying "all the definitions" of probable cause is "a reasonable ground for belief of guilt." *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). "[A]s the very name implies, we deal with probabilities." *Id.* at 174-175. Probable cause is a flexible concept grounded in fair probabilities which can be gleaned from considering the totality of the circumstances. *See Iacona*, 93 Ohio St.3d at 93. *See also Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (probable cause is a flexible, common-sense standard which does not demand any showing that the belief is correct or more likely true than false).

**{¶21}** There is a mixed standard of review applied to a juvenile court's probable cause determination at a mandatory transfer proceeding. *A.J.S.*, 120 Ohio

St.3d 185 at ¶ 51. In general, a reviewing court defers to a trial court's factual determinations on credibility and in doing so applies an abuse of discretion standard of review. *Id.* at ¶ 1, 51. Nevertheless, the evidence presented at the probable cause hearing "does not have to be unassailable" to qualify as credible. *Id.* at ¶ 46; *Iacona*, 93 Ohio St.3d at 93. Although the juvenile court can evaluate the quality of evidence presented in support of probable cause, the juvenile court "is not permitted to exceed the limited scope of the bindover hearing or to assume the role of the ultimate fact-finder." *A.J.S.*, 120 Ohio St.3d 185 at ¶ 43-44. "Obviously, the state has no burden to disprove alternate theories of the case at a bindover proceeding." *Id.* at ¶ 61. "*Determination of the merits of the competing prosecution and defense theories, both of which [are] credible, ultimately [is] a matter for the factfinder at trial.*" (Emphasis original.) *Id.* at ¶ 43, quoting *Iacona*, 93 Ohio St.3d at 96.

{¶22} Furthermore, the sufficiency of the evidence, presented by the state at the preliminary hearing held prior to a juvenile transfer, involves a legal question to be independently reviewed with no deference given to the decision of the juvenile court. *Id.* at ¶ 47, 51, citing, *e.g., State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541. "[W]hether the state has produced sufficient evidence to support a finding of probable cause in a mandatory-bindover proceeding is a question of law, and we review questions of law de novo." *Id.* at ¶ 47.

{¶23} In *A.J.S.*, the state appealed the juvenile court's denial of mandatory transfer in an attempted murder case. As the juvenile court made no factual findings in its entry denying mandatory transfer, the Supreme Court considered the court's statements on the record. *Id.* at ¶ 56. In finding the juvenile court was required to transfer the case, the Supreme Court pointed to three errors. First, the juvenile court abused its discretion in failing to consider all the evidence presented by the state at the probable cause hearing. *Id.* at ¶ 57, 59 (the court could not recall testimony on the location of each person when the juvenile began shooting). Second, the juvenile court "exceeded the scope of its review of the evidence when it weighed the conflicting evidence regarding the trajectory of the bullets * * *." *Id.* at ¶ 60. Third, the juvenile court improperly raised the burden by observing the state failed to "make

the case if it's possible or not" the bullets ricocheted (where a friend testified the juvenile only fired at the ground). *Id.* at ¶ 6, 60-62.

**{¶24}** The Supreme Court reviewed the transcript and found sufficient evidence of probable cause, noting: "It is true that some of the evidence could support a determination that A.J.S. fired his gun into the ground to scare the victims, rather than firing with the purpose to kill them." *Id.* at ¶ 63-64. However, "the resolution of conflicting theories of evidence, both of which are credible, is a matter for the trier of fact *at a trial on the merits* of the case, *not a matter for the exercise of judicial discretion at a bindover hearing* in the juvenile court." (Emphasis added.) *Id.* at ¶ 64. Upon affirming the appellate court's decision reversing the juvenile court, the Supreme Court remanded to the juvenile court with instructions to transfer the case to the general division of the common pleas court. *Id.* at ¶ 65.

ASSIGNMENT OF ERROR

**{¶25}** The state's assignment of error provides:

"THE JUVENILE COURT ERRED WHEN IT CONCLUDED THAT THE STATE FAILED TO PRESENT SUFFICIENT CREDIBLE EVIDENCE TO DEMONSTRATE PROBABLE CAUSE TO BELIEVE THAT [B.W.] PURPOSELY CAUSED OR AIDED ANOTHER IN CAUSING THE DEATH OF JARELL BROWN."

**{¶26}** The state suggests the juvenile court improperly assumed the role of the ultimate fact-finder or determined the merits of competing credible theories which task is reserved for the jury (or the judge in a bench trial) at the trial stage of the proceedings. In underscoring the limited scope of the juvenile court's function at the mandatory bindover hearing, the state emphasizes how it is merely required to set forth sufficient credible evidence showing there is probable cause supporting the elements of the pertinent offense. Appellee was charged with murder under R.C. 2903.02(A), which has the elements of purposely causing the death of another.

**{¶27}** The state emphasizes the important role of circumstantial evidence and reasonable inferences in an ultimate trial, let alone at a probable cause hearing. Intent can be ascertained from the surrounding facts and circumstances, and circumstantial evidence inherently has the same probative value as direct evidence.

*State v. Treesh*, 90 Ohio St.3d 460, 485, 739 N.E.2d 749 (2001). "A firearm is an inherently dangerous instrumentality, the use of which is likely to produce death, and a jury could reasonably infer from all testimony presented that a defendant formed the specific intent necessary to commit murder." *State v. Carter*, 7th Dist. No. 15 MA 0225, 2017-Ohio-7501, ¶ 99.

**{¶28}** The state also points to the law on complicity. Pursuant to R.C. 2923.03(F), a person who is complicit in the commission of an offense can be prosecuted and punished as if he were a principal offender, and complicity need not be charged in the indictment but can merely be stated in terms of the principal offense. *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶ 181. A juvenile who was 16 (or 17) at the time of the offense is subject to mandatory bindover if there is probable cause to believe he committed murder personally or through complicity. *Goins v. Wellington*, 7th Dist. Nos. 01 CA 208, 01 CA 210 (Dec. 18, 2001), citing *Agee v. Russell*, 92 Ohio St.3d 540, 546-548, 751 N.E.2d 1043 (2001).

**{¶29}** The state reviews the evidence obtained from the various video surveillance systems and the detective's testimony about how he constructed the timeline. Appellee and J.J. were with the victim who was buying cigars in a store within minutes of the shooting. They left the store together and walked in the direction of the alley. Appellee and J.J. walked behind the victim as they approached the location of the alley. A video shows them leaving the sidewalk as if to cross the street to the side where the alley was located. According to a reasonable construction of the evidence, a gun was fired at the victim in the alley. A 9mm shell casing was found in the alley near a cigar and cigar wrappers with serial numbers showing they were purchased at the store at the time the three were in the store. The victim usually carried a 9mm firearm, but no firearm was recovered from the scene. The victim was shot from behind with a handgun; the bullet entered his upper back and exited his neck.

**{¶30}** The medical examiner opined the victim could have run for a minute after suffering the wound. A video shows a person, whom the detective concluded

was the victim, running down the alley alone toward the street where his body was found. This was minutes after the victim stepped off the sidewalk with Appellee and J.J. on Hylda Avenue across from the opening of the alley. A passing motorist saw the victim's body in the road soon after the firing of shots which were heard by others in the area, including the firemen at the nearby fire station. The motorist, rather than the victim's companions, called 911.

{¶31} Appellee contends the timeline may not be as compact as the detective suggests, noting the detective thought he was called to the scene around 11:00 p.m. Appellee believes it was significant the firemen reported hearing three shots but only one 9mm casing was found in the alley. At the hearing, the defense theorized a car may have been waiting on West Hylda Avenue just outside the camera's range and focused on whether the detective could disprove someone else, such as the material witness, was waiting for the victim with a gun just outside the range of the video. (Tr. 123). Appellee concludes the prosecution failed to demonstrate a car or unidentified person was not present at the scene. As the state points out, it did not have a burden to disprove alternate theories of the case argued by the defense or otherwise implied by the evidence. *A.J.S.*, 120 Ohio St.3d 185 at ¶ 61. When presented with alternate credible theories of the case at the bindover hearing, a juvenile court is not permitted to choose a theory; this is the function of the jury at trial (or judge at a bench trial). *Id.* at ¶ 43, 64; *Iacona*, 93 Ohio St.3d at 96.

{¶32} The evidence demonstrates more than a fair probability *the victim* entered the alley. The defense urged, however, there was no (admitted) evidence showing Appellee entered the alley. In reviewing the sufficiency of the evidence establishing probable cause, the state asserts this court should also consider the detective's testimony as to what J.J. told him. J.J. relayed three stories, which changed as the detective revealed more information gleaned from the videos: (1) he was at Eldridge's house with the victim and Appellee, Eldridge asked them to leave due to an issue with the victim, and the victim left in a blue car; (2) the victim pulled out his gun to rob the "weed man" who pulled up in a blue car, but the car's passenger shot the victim in the back of the head; and (3) Appellee shot the victim in

the back of the head with the victim's gun after recalling the victim snitched on them (and the injured victim ran toward Indianola). Appellee suggests the trial court could find these statements lacked any indicia of reliability.

**{¶33}** In evaluating the quality of the evidence presented by the state to show probable cause, a juvenile court is prohibited from exceeding "the limited scope of the bindover hearing" and is barred from "assum[ing] the role of the ultimate fact-finder." *A.J.S.*, 120 Ohio St.3d 185 at ¶ 43-44. At this preliminary stage, the state was not required to prove the truth of the claims. *See id.* at ¶ 51 (the state merely had the burden to show probable cause, not to prove Appellee's guilt). The evidence presented by the detective, including the statement he collected from J.J., provided a reasonable ground for believing Appellee was involved in the murder. In other words, if J.J.'s statement is part of the equation, probable cause was clearly established.

**{¶34}** However, it appears the juvenile court refused to consider any evidence about J.J. speaking to the detective in the case against Appellee and only considered it to find probable cause in the case against J.J., which was heard jointly with Appellee's case.[5] The state contends the juvenile court erred in disregarding relevant and admissible evidence of probable cause such as the statement made by J.J. to the detective. The state asserts it is well-settled that hearsay may form the basis for the finding of probable cause, citing cases allowing hearsay when determining probable cause for searches. *See, e.g., United States v. Ventresca*, 380 U.S. 102, 107-108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965) (probable cause for a warrant can be based on evidence that would qualify as hearsay if presented in a criminal trial).

**{¶35}** The juvenile court's decision to exclude J.J.'s statement appears to be based on a finding it was prohibited hearsay under the confrontation clause and evidentiary rules. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the

---

[5] No objection was entered during the detective's testimony on what J.J. told him. Eleven months later, the court ruled State Ex. 2-3 (J.J.'s video statement) inadmissible and seemed to impliedly strike the detective's testimony on what he was told by J.J.

matter asserted. Evid.R. 801(C). "A statement is not hearsay if it is admitted to prove that the declarant made it, rather than to prove the truth of its contents." *State v. Williams*, 38 Ohio St.3d 346, 348, 528 N.E.2d 910, 924 (1988), fn. 4 (a statement "which would otherwise be considered hearsay" may be admitted to show the effect on the hearer). Similarly, even in a trial where the confrontation clause clearly applies to out-of-court testimonial statements, the confrontation clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford v. Washington*, 541 U.S. 36, 59, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), fn. 9, citing *Tennessee v. Street*, 471 U.S. 409, 414, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985).

**{¶36}** The fact J.J. told the officer three different stories was not offered to prove the truth of the matter asserted by the declarant. Moreover, the three stories contained incompatible content, and thus could not all have been offered to prove the truth of the matter asserted by the declarant. As to the final story incriminating Appellee as the shooter, there is a suggestion the juvenile court pre-judged admissibility issues that may or may not arise at trial. For instance, the "Former Testimony" hearsay exception provides: "Testimony given at a preliminary hearing must satisfy the right to confrontation and exhibit indicia of reliability." Evid.R. 804(B)(1). This is the rule for ascertaining whether prior preliminary hearing testimony can be used in the actual trial. Additionally, there is a theory that merely because a statement would qualify as hearsay if presented at a later criminal trial does not necessarily make it hearsay for purposes of a probable cause hearing. *See State v. Miles*, 5th Dist. No. 3341 (June 28, 1988) ("The testimony was admitted to show the existence of probable cause and not to show the truth of the matters asserted. In short, the use of the testimony was not a hearsay use."). *See also In re D.S.*, 1st Dist. No. C-130094, 2013-Ohio-4565, ¶ 8 (in reversing the juvenile court's dismissal, the First District found probable cause by using a police officer's testimony as to what the co-defendant told the officer). Even if considered hearsay, the statement is not barred unless the confrontation clause or the evidentiary rules apply to exclude it.

**{¶37}** The federal confrontation clause provides: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." Sixth Amendment, U.S. Constitution. The corresponding state confrontation clause provides no greater rights. *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, ¶ 12. Referring specifically to a trial, the Ohio Constitution at Article I, Section 10 provides: "In any trial, in any court, the party accused shall be allowed * * * to meet the witnesses face to face * * *." The right to confrontation through the presentation of a certain quality of evidence is generally considered a "trial right." *See, e.g., Barber v. Page*, 390 U.S. 719, 725, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968).

**{¶38}** "As a rule, if an out-of-court statement is testimonial in nature, it may not be introduced against the accused *at trial* unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness." (Emphasis added.) *Bullcoming v. New Mexico*, 564 U.S. 647, 657, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011). The United States Supreme Court "has repeatedly declined to require the use of adversarial procedures to make probable cause determinations." *Kaley v. United States*, __ U.S. __, 134 S.Ct. 1090, 1103, 188 L.Ed.2d 46 (2014). *See also Brinegar v. United States*, 338 U.S. 160, 174-175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) (admitting hearsay at a suppression hearing to ascertain the constitutionality of a vehicle search and thereafter excluding it at trial was not inconsistent or improper but "illustrate[s] the difference in standards and latitude allowed in passing upon the distinct issues of probable cause and guilt").

**{¶39}** The Ohio Supreme Court held the constitutional right to confront one's accusers "relates to the actual trial for the commission of the offense and not to the preliminary examination * * *." *Henderson v. Maxwell*, 176 Ohio St. 187, 188, 198 N.E.2d 456 (1964). Where newer case law is a by-product of the confrontation clause, it only applies if the confrontation clause applies. *State v. Carter*, 7th Dist. No. 15 MA 0225, 2017-Ohio-7501, ¶ 39 (if the confrontation clause does not apply, then *Bruton* does not apply), as to *Bruton v. United States*, 391 U.S. 123, 88 S.Ct.

1620, 20 L.Ed.2d 476 (1968) (confrontation violation when a codefendant's testimonial confession incriminating the defendant is introduced at a joint trial).

**{¶40}** Federal circuit courts have concluded the standards for admissibility of evidence at a preliminary hearing are not governed by the Sixth Amendment's confrontation clause. *Peterson v. California*, 604 F.3d 1166, 1170 (9th Cir.2010); *United States v. Andrus*, 775 F.2d 825, 836 (7th Cir.1985); *United States v. Harris*, 458 F.2d 670, 677-678 (5th Cir.1972). *See also United States v. Kin-Hong*, 110 F.3d 103, 120 (1st Cir.1997) ("In probable cause hearings under American law, the evidence taken need not meet the standards for admissibility at trial" as a "preliminary hearing is not a minitrial of the issue of guilt").

**{¶41}** We do not believe the juvenile court (at a probable cause hearing held prior to transferring a juvenile to the general division) was bound by confrontation clause standards for admissibility of evidence. We now review the questions of state law. Specifically, whether rules of evidence apply at the juvenile probable cause hearing and if so whether a hearsay exception would permit the statement's introduction at the probable cause hearing.

**{¶42}** Initially, we note a criminal rule states the preliminary hearing in a felony case against a defendant "shall be conducted under the rules of evidence prevailing in criminal trials generally." Crim.R. 5(B)(1)-(2). This is a departure from the rules governing federal procedure in preliminary hearings; the evidentiary rules are expressly inapplicable to preliminary examinations in federal criminal cases, except as to privilege. *See* Fed.Evid.R. 1101(d)(3). *See also* Staff Note to former Fed.R.Crim.P. 5.1(a) (since the rules of evidence are explicitly inapplicable to preliminary hearings, Crim.R. 5.1 need no longer specifically explain, "probable cause may be based upon hearsay evidence in whole or in part").

**{¶43}** Pursuant to Crim.R. 1(C)(5), the Ohio Criminal Rules, "to the extent that specific procedure is provided by other rules of the Supreme Court or to the extent that they would by their nature be clearly inapplicable, shall not apply to procedure * * * in juvenile proceedings against a child * * *." Various provisions in Crim.R. 5(B) would not apply to juvenile proceedings. For instance, Crim.R 5(B) requires bindover

to the common pleas court if there is probable cause to believe the defendant committed the crime charged or any other felony; however the juvenile statute does not permit bindover directly after the preliminary hearing unless there is probable cause of an offense specifically listed in the statute. *See* R.C. 2152.12(A). In addition, Crim.R. 5(B) provides for bindover of related misdemeanors (except minor misdemeanors) accompanying the felony, which is at odds with R.C. 2151.52(F). Also, the state can take the case to the grand jury (where the rules of evidence are inapplicable) after a trial judge finds insufficient probable cause, but a juvenile court's finding cannot be similarly avoided as a juvenile court must find probable cause in order to relinquish jurisdiction. *See* R.C. 2152.12.

{¶44} The Juvenile Rules "prescribe the procedure to be followed in all juvenile courts of this state in all proceedings coming within the jurisdiction of such courts" (with listed exceptions). Juv.R. 1(A). The juvenile rule providing for a pre-transfer preliminary hearing, Juv.R. 30(A), does not contain Crim.R. 5(B)(2)'s incorporation of the evidentiary rules.

{¶45} We turn to the Ohio Rules of Evidence, which "govern proceedings in the courts of this state, subject to the exceptions stated in division (C) of this rule." Evid.R. 101(A). Some exceptions include grand jury proceedings and special statutory proceedings of a non-adversary nature in which these rules would by their nature be clearly inapplicable. Another exception reads: "Miscellaneous Criminal Proceedings. Proceedings for extradition or rendition of fugitives; sentencing; granting or revoking probation; proceedings with respect to community control sanctions; issuance of warrants for arrest, criminal summonses and search warrants; and proceedings with respect to release on bail or otherwise." Evid.R. 101(C)(3). This list of excluded miscellaneous criminal proceedings does not contain preliminary hearings (as does the aforementioned federal counterpart), so as not to contradict Crim.R. 5(B)(2) (which states the rules of evidence applicable to criminal trials shall be applied to the preliminary hearing in a felony case).

{¶46} Evid.R. 101(C) also provides the Rules of Evidence do not apply in "[p]roceedings in which other rules prescribed by the Supreme Court govern matters

relating to evidence." Evid.R. 101(C)(6). For instance, a juvenile court at a dispositional hearing "may admit evidence that is material and relevant, including, but not limited to, hearsay, opinion, and documentary evidence." Juv.R. 34(B)(2) (with the exception of permanent custody). The Ninth District equated the amenability hearing (held after the probable cause hearing in a discretionary bindover) with a dispositional hearing and admitted hearsay under Juv.R. 34. *State v. Williams*, 9th Dist. No. 91CA005054 (Nov. 6, 1991).

**{¶47}** Moreover, the stated purpose of the evidentiary rules is to provide procedures for the *adjudication* of causes. Evid.R. 102. As set forth above, a simple hearing to determine if there is probable cause for the offense charged in order to transfer a juvenile to the general division of the common pleas court to be tried as an adult is not an adjudication. *Breed*, 421 U.S. 519 at fn. 18 (if the bindover hearing required proof of guilt, it would be adjudicatory and further criminal proceedings could not occur due to double jeopardy). *See also Carmichael*, 35 Ohio St.2d at 7-8 (amenability hearing, held with probable cause hearing, was not adjudicatory; so hearsay was admissible in a pre-rule case); *In re A.M.*, 139 Ohio App.3d 303, 308, 743 N.E.2d 937 (8th Dist.2000) ("The introduction of evidence of probable cause to believe the juvenile committed the alleged offense does not transform a probable cause hearing into an adjudicatory proceeding.")'; *State v. Whisenant*, 127 Ohio App.3d 75, 85, 711 N.E.2d 1016 (11th Dist.1998) ("because the bindover proceeding is not adjudicative (the juvenile's guilt or innocence is not at issue), statutory and constitutional questions concerning the admissibility of evidence are premature and need not be addressed").

**{¶48}** Accordingly, we conclude the Ohio Rules of Evidence do not apply in a juvenile mandatory bindover proceeding. Therefore, the juvenile court should have considered J.J.'s statements to the detective in determining whether there was probable cause to bind Appellee over.

**{¶49}** Even if the final portion of J.J.'s statement was considered hearsay and the evidentiary rules are applied, there are hearsay exceptions. *See* Evid.R. 802 (hearsay is not admissible except as otherwise provided by federal or state

constitutions or state law). The statement against interest exception was discussed by the parties below concerning the statement of the material witness, and the court suggested J.J.'s statement could not be used to corroborate this statement. The hearsay exception, for use when the declarant is unavailable, provides: "A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true." Evid.R. 804(B)(3). "A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the truthworthiness of the statement." *Id.*

**{¶50}** We refer back to another exception to the evidentiary rules contained in Evid.R. 101(C)(1), which states the evidentiary rules do not apply to "[d]eterminations prerequisite to rulings on the admissibility of evidence when the issue is to be determined by the court under Evid.R. 104." Likewise, Evid.R. 104(A) provides: "Preliminary questions concerning * * * the admissibility of evidence shall be determined by the court * * * In making its determination it is not bound by the rules of evidence except those with respect to privileges." This is part of the reason why "the Rules of Evidence do not apply to suppression hearings." *See State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155, ¶ 17. Additionally, in showing evidence is admissible under a hearsay exception, the state can rely on evidence that may be considered hearsay at trial. *See, e.g., Bourjaily v. United States*, 483 U.S. 171, 178, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987) (court may consider hearsay in making factual determinations prerequisite to a hearsay exception). Thus, two allegedly inadmissible statements can corroborate each other so as to indicate truthworthiness under Evid.R. 804(B)(3).

**{¶51}** Besides the fact that two alleged hearsay statements corroborated each other, the evidence collected by the detective also provided corroboration for J.J.'s final story. Any finding to the contrary was wholly unreasonable at the probable

cause hearing. In any event, the juvenile court's decision appears to have been based on a belief the confrontation clause prohibits a co-defendant's testimonial statement to a detective to be admitted at a preliminary juvenile transfer hearing. We do not believe there is such a prohibition.

**{¶52}** Considering the totality of the circumstances, we conclude there was sufficient, credible evidence demonstrating probable cause in this case. Viewing the evidence presented at the probable cause hearing and all rational inferences in the light most favorable to the state, a rational person could conclude there were reasonable grounds for believing Appellee committed murder, i.e., there was a "fair probability" Appellee was culpably involved in the murder. When a reviewing court reverses a juvenile court's finding of no probable cause and finds sufficient probable cause in a mandatory transfer case, a proper remedy is to reverse and remand with instructions to enter a mandatory transfer order. *See A.J.S.*, 120 Ohio St.3d 185 at ¶ 65.

**{¶53}** Accordingly, the juvenile court's judgment of dismissal is reversed, and the case is remanded with instructions to enter an order of mandatory transfer.


Donofrio, J., concurs in judgment only; see concurring in judgment only opinion.

Waite, J., concurs.

DONOFRIO, J. concurs in judgment only with concurring opinion.

**{¶54}** I respectfully concur in judgment only with the majority's judgment that the judgment of dismissal is reversed and the case is remanded with instructions to enter an order of mandatory transfer. I write separately, however, because once the conclusions are reached that the Ohio Rules of Evidence do not apply at a juvenile mandatory bindover hearing and that the juvenile court is not bound by confrontation clause standards at a juvenile mandatory bindover hearing, there is no need for further analysis in this case.

**{¶55}** At paragraph 41, the majority asks the question whether the Ohio Rules of Evidence apply at juvenile mandatory bindover hearings. They conclude that, in fact, the rules of evidence do not apply at juvenile mandatory bindover hearings. I agree with this determination based on the majority's reasoning in paragraphs 42 through 47. I further agree with the majority's analysis of the confrontation clause in paragraphs 37 through 41 and with their conclusion that the juvenile court was not bound by confrontation clause standards for the admissibility of evidence.

**{¶56}** Once the above conclusions are reached, however, there is no need for further discussion regarding hearsay, non-hearsay, or hearsay exceptions. In fact, I do not agree with the majority's analysis regarding non-hearsay issues of J.J.'s statement to the detective.

**{¶57}** I would simply conclude that because the rules of evidence and the confrontation clause standards do not apply in this case, the trial court erred in excluding J.J.'s statements to the detective. When J.J.'s statements are considered along with the other evidence presented at the mandatory bindover hearing, there was sufficient evidence on which to bind Appellee over.