[Cite as *State v. Starling*, 2019-Ohio-1478.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-34 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-336 |
| | : | |
| NICHOLAS STARLING | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

· · · · · · · · · · ·

O P I N I O N

Rendered on the 19th day of April, 2019.

· · · · · · · · · · ·

ANDREW P. PICKERING, Atty. Reg. No. 0068770, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellee

TIMOTHY B. HACKETT, Assistant Ohio Public Defender, Atty. Reg. No. 0093480, 250 East Broad Street, Suite 1400, Columbus, Ohio 43215
        Attorney for Defendant-Appellant

· · · · · · · · · · · · ·

WELBAUM, P.J.

{¶ 1} Defendant-appellant, Nicholas Starling, appeals from his conviction in the Clark County Court of Common Pleas following his guilty plea to one count of murder. For the reasons outlined below, Starling's conviction will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} In 2016, a then sixteen-year-old Starling was charged in the Juvenile Division of the Clark County Court of Common Pleas with acts that if committed by an adult would constitute murder in violation of R.C. 2903.02(A) and tampering with evidence in violation of R.C. 2921.12(A)(1). The charges arose from allegations that Starling killed his 15-year-old brother, H., while at their residence in Springfield, Clark County, Ohio. Specifically, it was alleged that Starling hit H. on the head multiple times with a baseball bat and stabbed H. multiple times in the neck with a kitchen knife. It was further alleged that after killing H., Starling discarded the baseball bat behind a fence in his backyard and then hid the kitchen knife in his computer bag.

{¶ 3} After Starling was charged in the juvenile court, the State moved for Starling's case to be transferred to adult court. The matter was then scheduled for a probable cause hearing. Following that hearing, the juvenile court determined there was sufficient evidence to find probable cause to believe that Starling committed the criminal acts as charged. Given Starling's age and the juvenile court's probable cause finding, the juvenile court transferred Starling's case to adult court pursuant to R.C. 2152.12(A)(1)(a)(i).

{¶ 4} Following Starling's transfer to adult court, the Supreme Court of Ohio issued

its opinion in *State v. Aalim*, 150 Ohio St.3d 463, 2016-Ohio-8278, 83 N.E.3d 862 ("*Aalim I*"). In *Aalim I*, the Supreme Court held that the mandatory-transfer statutes, R.C. 2152.10(A) and R.C. 2152.12(A), were unconstitutional. Due to the holding in *Aalim I*, the adult court transferred Starling's case back to juvenile court.

{¶ 5} Once Starling's case was transferred back to juvenile court, the juvenile court reaffirmed its probable cause finding and scheduled the matter for an amenability hearing. The amenability hearing was continued several times so that psychological experts could evaluate Starling. Meanwhile, the Supreme Court of Ohio accepted *Aalim I* for reconsideration and stayed the execution of judgment. Due to the uncertainty surrounding the holding in *Aalim I*, the parties agreed to an additional 60-day continuance in hopes that the Supreme Court would have by then clarified its position on the constitutionality of the mandatory-transfer statutes.

{¶ 6} Shortly after the parties entered the agreed continuance, the Supreme Court issued its opinion in *State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883 ("*Aalim II*"). The Supreme Court's decision in *Aalim II* vacated *Aalim I* and upheld the constitutionality of the mandatory-transfer statutes. In light of the Supreme Court's decision in *Aalim II*, the State moved for the juvenile court to transfer Starling's case back to adult court pursuant to the mandatory transfer provision in R.C. 2152.12(A)(1)(a)(i). Because the Supreme Court affirmed the constitutionality of R.C. 2152.12(A), and because the juvenile court previously found probable cause to believe that Starling had committed the criminal activity charged, the juvenile court granted the State's motion and ordered the transfer of Starling's case back to adult court without holding an amenability hearing.

{¶ 7} Once Starling's case was transferred back to adult court, the Clark County Grand Jury returned an indictment charging Starling with one count of aggravated murder in violation of R.C. 2903.01(A), one count of murder in violation of R.C. 2903.02(A), three counts of felony murder in violation of R.C. 2903.02(B), and two counts of tampering with evidence in violation of R.C. 2921.12(A)(1). Starling thereafter entered pleas of not guilty and not guilty by reason of insanity.

{¶ 8} After entering his pleas, Starling requested the trial court to order an evaluation to determine his competency to stand trial. Starling also filed a motion to suppress certain evidence and inculpatory statements that Starling made to detectives. During the investigation of H.'s death, Starling was twice interviewed by detectives without any guardian or attorney present. Both interviews occurred on the day H. was found dead.

{¶ 9} At the first interview, Starling was not given *Miranda* warnings; however, it is undisputed that Starling made no inculpatory statements during the initial interview. Starling did, however, consent to detectives searching his bedroom and cell phone. Starling was permitted to go home after the first interview, but was called back four hours later for a second interview.

{¶ 10} At the second interview, detectives Mirandized Starling after asking him a few preliminary questions. Upon being Mirandized, Starling stated that he understood his *Miranda* rights. Starling also signed a written waiver of those rights. After his *Miranda* waiver, Starling told detectives that he and H. had an argument over candy two days earlier. Although Starling initially denied knowledge of how H. was killed, upon further questioning, Starling confessed to entering H.'s bedroom, grabbing a baseball bat,

and hitting H. over the head 14 to 15 times while H. was asleep. Starling also confessed to stabbing H. in the neck two or three times with a kitchen knife. Starling told detectives that he then discarded the baseball bat over a fence in his back yard and hid the kitchen knife in his computer bag after cleaning it in the bathroom.

{¶ 11} As part of his motion to suppress, Starling claimed that his confession was elicited in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Specifically, Starling argued that his youth, inexperience, and learning disabilities prevented his confession from being voluntarily entered. However, before the trial court ruled on the motion to suppress, Starling entered into a plea agreement with the State and pled guilty to murder in violation of R.C. 2903.02(A). In exchange for his guilty plea, the State agreed to dismiss the remaining charges against him.

{¶ 12} After accepting Starling's guilty plea, the trial court proceeded immediately to sentencing. During sentencing, the parties agreed that a prison sentence of 15 years to life was mandatory for Starling's offense. Due to the mandatory nature of Starling's sentence, the trial court ordered Starling to serve 15 years to life in prison.

{¶ 13} Starling now appeals from his conviction, raising four assignments of error for review.

**First Assignment of Error**

{¶ 14} Under his First Assignment of Error, Starling contends that his trial counsel provided ineffective assistance by failing to file a motion to suppress at the probable cause hearing in juvenile court. Starling claims that his trial counsel should have moved to suppress his confession based on the same argument he raised in the motion to suppress

filed in adult court, i.e., that his confession was involuntary and obtained in violation of *Miranda*. Starling maintains that trial counsel's failure to seek suppression of his confession at the probable cause hearing prejudiced him because that failure resulted in a flawed probable cause determination that invalidated his transfer to adult court. On that basis, Starling contends he was deprived of his right to effective assistance of counsel. We disagree.

{¶ 15} Alleged instances of ineffective assistance of trial counsel are reviewed under the two-pronged analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). To prevail on an ineffective assistance claim, a defendant must establish: (1) that his or her trial counsel's performance was deficient and (2) that the deficient performance resulted in prejudice. *Strickland* at paragraph two of the syllabus; *Bradley* at paragraph two of the syllabus. The failure to make a showing of either deficient performance or prejudice defeats a claim of ineffective assistance of counsel. *Strickland* at 697.

{¶ 16} To establish deficient performance, it must be shown that trial counsel's performance fell below an objective standard of reasonable representation. *Id.* at 688. In evaluating counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955).

{¶ 17} To establish prejudice, the defendant must demonstrate that there is "a

reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland* at 687-688 and *Bradley* at paragraph two of the syllabus. " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Bradley* at 142, quoting *Strickland* at 694.

{¶ 18} "The failure to file a suppression motion is not per se ineffective assistance of counsel." *State v. Wilson*, 2d Dist. Clark No. 08CA0045, 2009-Ohio-2744, ¶ 11, citing *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000). *Accord State v. Thomas*, 2d Dist. Clark No. 2010 CA 48, 2011-Ohio-1987, ¶ 15. "Rather, trial counsel's failure to file a motion to suppress constitutes ineffective assistance of counsel only if the failure to file the motion caused Defendant prejudice; that is, when there is a reasonable probability that, had the motion to suppress been filed, it would have been granted." (Citations omitted.) *Wilson* at ¶ 11*; State v. Nields*, 93 Ohio St.3d 6, 34, 752 N.E.2d 859 (2001).

{¶ 19} The State claims that Starling waived his ineffective assistance claim by pleading guilty to murder in adult court. In support of that argument, the State relies on the well-established principle that "[a] guilty plea waives the right to allege ineffective assistance of counsel, except to the extent the errors caused the plea to be less than knowing and voluntary." *State v. King*, 2d Dist. Montgomery No. 23325, 2010-Ohio-2839, ¶ 11, citing *State v. Spates*, 64 Ohio St.3d 269, 595 N.E.2d 351 (1992). The State maintains that Starling's ineffective assistance claim is waived because he does not contend that trial counsel's failure to file a motion to suppress at the probable cause hearing caused his guilty plea to be less than knowing and voluntary.

{¶ 20} We are, however, mindful of the fact that a guilty plea does not preclude claims that attack the trial court's jurisdiction. *State v. Vance*, 2d Dist. Clark Nos. 09-CA-115, 09-CA-116, 2010-Ohio-5757, ¶ 15-16, citing *State v. Fitzpatrick*, 102 Ohio St.3d 321, 2004-Ohio-3167, 810 N.E.2d 927, ¶ 78-79; *State v. Moore*, 2d Dist. Montgomery No. 22365, 2008-Ohio-4322, ¶ 12. Rather, "guilty pleas waive all non-jurisdictional defects in prior stages of the proceedings." *State v. Randle*, 2d Dist. Montgomery No. 21931, 2007-Ohio-2967, ¶ 3, citing *Ross v. Common Pleas Court of Auglaize Cty.*, 30 Ohio St.2d 323, 285 N.E.2d 25 (1972).

{¶ 21} When a juvenile court improperly transfers jurisdiction over a juvenile to adult court, any subsequent conviction in adult court is void for lack of jurisdiction. *State v. Washington*, 2d Dist. Montgomery No. 20226, 2005-Ohio-6546, ¶ 14, citing *State v. Wilson*, 73 Ohio St.3d 40, 44, 652 N.E.2d 196 (1995). "Because a [transfer] proceeding pertains to the jurisdiction of the common pleas court, some courts have held that challenges to [a] juvenile court's decision with respect to the R.C. 2152.12 factors pertaining to [transfer] are not waived through a guilty plea." *State v. Lewis*, 9th Dist. Summit No. 27887, 2017-Ohio-167, ¶ 7, citing *State v. Amos*, 1st Dist. Hamilton No. C-150265, 2016-Ohio-1319, ¶ 28 and *State v. Legg*, 2016-Ohio-801, 63 N.E.3d 424, ¶ 31, fn. 3 (4th Dist.). (Other citations omitted.) *Accord State v. Brandeberry*, 6th Dist. Lucas No. L-16-1137, 2017-Ohio-5676, ¶ 17 ("appellant, by entering a guilty plea, did not waive her right to raise a jurisdictional constitutional challenge with respect to the mandatory transfer provisions in R.C. 2152.10(A)(1)(a) and 2152.12(A)(1)(a)"); *State v. Poole*, 8th Dist. Cuyahoga No. 98153, 2012-Ohio-5739, ¶ 1, fn. 1 ("[a] guilty plea made following a bindover or transfer from the juvenile division does not waive the right to appeal the

bindover or transfer").

{¶ 22} But other courts, including this one, have held that constitutional challenges to juvenile transfer proceedings are waived when the defendant pleads guilty and does not contest validity of his plea. *See, e.g.*, *State v. Brookshire*, 2d Dist. Montgomery No. 25853, 2014-Ohio-1971, ¶ 29; *State v. Bradford*, 5th Dist. Stark No. 2013 CA 00124, 2014-Ohio-904, ¶ 76-79; *State v. Quarterman*, 9th Dist. Summit No. 26400, 2013-Ohio-3606, ¶ 3-6 (finding defendants were prevented from arguing on appeal that R.C. 2152.10(A)(2)(b) and 2152.12(A)(1)(b) violated their constitutional rights to due process, equal protection, and to be free from cruel and unusual punishment, because the defendants pled guilty to the charges against them and did not contest the validity of their plea). However, none of those cases involved claims of ineffective assistance of counsel.

{¶ 23} In this case, Starling's ineffective assistance claim indirectly attacks the jurisdiction of the adult court. Specifically, Starling argues that if his trial counsel had, at the probable cause hearing, filed a motion to suppress his confession, his confession would have been suppressed and there would have been no basis for the juvenile court to find probable cause to believe he committed the criminal acts in question. Without a probable cause finding, Starling maintains that there would have been no basis for his mandatory transfer to adult court under R.C. 2152.12(A)(1)(a)(i). Starling therefore claims his transfer to adult court would have been improper and thus a jurisdictional error that was not waived by his guilty plea.

{¶ 24} Assuming, arguendo, that Starling's guilty plea did not waive his ineffective assistance of counsel claim, we nevertheless find no merit to his claim. *See Legg,* 2016-

Ohio-801, 63 N.E.3d 424 at ¶ 60-61 (appellate court assumes, arguendo, that an ineffective assistance claim similar to Starling's was not waived by a guilty plea). This is because trial counsel's failure to file a motion to suppress at the probable cause hearing did not amount to deficient performance or result in any prejudice to Starling.

{¶ 25} As previously noted, Starling's probable cause hearing was held pursuant to R.C. 2152.12(A)(1)(a)(i). Pursuant to that statute, and as relevant here, a child 16 or 17 years of age who is charged with an act that would constitute murder if committed by an adult shall be transferred to adult court if at a hearing the juvenile court finds there is probable cause to believe the juvenile committed the act charged.

{¶ 26} "[A] probable cause hearing held before a juvenile court's transfer to adult court is a preliminary, non-adjudicatory proceeding[.]" *Matter of B.W.*, 2017-Ohio-9220, 103 N.E.3d 266, ¶ 18 (7th Dist.), citing *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975), fn. 18, and *State v. Carmichael*, 35 Ohio St.2d 1, 7-8, 298 N.E.2d 568 (1973). *Accord State v. Gilbert*, 6th Dist. Lucas No. L-03-1273, 2005-Ohio-2350, ¶ 11; *In re A.M.*, 139 Ohio App.3d 303, 308, 743 N.E.2d 937 (8th Dist.2000); *State v. Whisenant*, 127 Ohio App.3d 75, 85, 711 N.E.2d 1016 (11th Dist.1998). This proceeding is non-adjudicatory because "the juvenile court's function is not to determine whether the juvenile is guilty of the charge[,] but is to determine whether there is probable cause to believe the juvenile is guilty." (Emphasis omitted.) *B.W.* at ¶ 18, citing *State v. Iacona*, 93 Ohio St.3d 83, 93, 752 N.E.2d 937 (2001).

{¶ 27} Because a probable cause hearing is non-adjudicatory, the evidence presented at a probable hearing need not meet the same rigorous standards for admissibility at trial. *See Whisenant* at 85, quoting *In re Ralph M.*, 211 Conn. 289, 559

A.2d 179 (1989) (" '[statutory and] constitutional questions concerning the admissibility of [a juvenile's] statements raised by the [state], while relevant at a later adjudicatory proceeding, are not appropriate for resolution at a transfer [i.e., bindover] hearing' "). *See also B.W.* at ¶ 41, 48 (holding that the confrontation clause standards for the admissibility of evidence and the Ohio Rules of Evidence do not apply to probable cause hearings that are held prior to transferring a juvenile to adult court); *State v. Grays*, 1st Dist. Hamilton No. C-790914, 1981 WL 9566, *1 (Jan. 14, 1981) ("it cannot seriously be argued that testimony inadmissible at trial under the rules of evidence cannot be considered in a preliminary proceeding such as [a probable cause hearing in juvenile court]"). *See generally Brinegar v. United States*, 338 U.S. 160, 174, 69 S.C.t. 1302, 93 L.Ed. 1879 (1949) (discussing the different standards and latitude allowed in determining probable cause versus guilt and indicating a lesser standard is required for probable cause).

{¶ 28} In *Whisenant*, the Eleventh District Court of Appeals specifically noted that because juvenile probable cause hearings are not adjudicatory in nature, "statutory and constitutional questions concerning the admissibility of evidence are premature and need not be addressed." *Whisenant* at 85. Based on that reasoning, the court in *Whisenant* concluded that "[f]undamental fairness and due process are not violated by the juvenile court's failure to rule on or to suppress evidence obtained in alleged violation of *Miranda* in [a probable cause/bindover proceeding]." *Id.* Therefore, *Whisenant* stands for the proposition that evidence that might otherwise be suppressed at trial on the basis of a *Miranda* violation is nevertheless admissible during a probable cause hearing held in juvenile court.

{¶ 29} The Supreme Court of Ohio has also held that motions to suppress evidence do not lie at preliminary hearings, but rather become ripe for determination only after arraignment and prior to trial. *State v. Mitchell*, 42 Ohio St.2d 447, 329 N.E.2d 682 (1975), syllabus; accord *In re C.G.*, 8th Dist. Cuyahoga No. 97950, 2012-Ohio-5286, ¶ 39, fn. 2 ("motions to suppress are not to be addressed at a probable cause hearing"). Although *Mitchell* did not specifically address a probable cause hearing held in juvenile court, it did concern a preliminary hearing in adult court where, under Crim.R. 5, the trial court had to determine whether probable cause existed to believe the defendant committed a criminal act. *Mitchell* at 450-451. Given the substantially similar nature of the two hearings, we find that *Mitchell* supports the conclusion that it is improper to file a motion to suppress during a preliminary probable cause hearing in juvenile court.

{¶ 30} Although the Supreme Court of Ohio has made it clear that "the juvenile court must evaluate the quality of the evidence presented by the state in support of probable cause as well as any evidence presented by the respondent that attacks probable cause[,]" *Iacona*, 93 Ohio St.3d at 93, 752 N.E.2d 937, citing *Kent v. United States*, 383 U.S. 541, 563, 86 S.Ct. 1045, 16 L.Ed.2d 84, such an evaluation does not include entertaining motions to suppress. *Mitchell* at 450-451. In *Mitchell*, the Supreme Court noted that only evidence that is "clearly excludable under the rules of evidence prevailing in criminal trials" should, upon appropriate objection, be excluded by a magistrate when determining whether there is probable cause to believe a crime has been committed, but that such evidence may never be suppressed. *Id.* at 451.

{¶ 31} After reviewing the video evidence of Starling's confession, we do not find that the confession was clearly excludable. The confession was made while Starling

appeared coherent and after detectives read Starling his *Miranda* rights and obtained a signed, written waiver of those rights. The fact that Starling contends his confession was involuntary and obtained in violation of *Miranda* is a question that was not ripe for review at the non-adjudicatory probable cause hearing. We note that "the evidence presented at the probable cause hearing 'does not have to be unassailable' to qualify as credible." *B.W.*, 2017-Ohio-9220, 103 N.E.3d 266, at ¶ 21, quoting *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, ¶ 46, citing *Iacona* at 93.

{¶ 32} Based on the foregoing, we find that filing a motion to suppress for purposes of Starling's probable cause hearing would have been premature and improper. Therefore, trial counsel's decision not to file a motion to suppress at the probable cause hearing was warranted and a matter of sound trial strategy that cannot serve as the basis for an ineffective assistance claim. Accordingly, based on the facts and circumstances here, Starling has failed to establish deficient performance on the part of his trial counsel.

{¶ 33} Starling has also failed to establish that he was prejudiced by trial counsel's failure to file a motion to suppress. Regardless of any potential *Miranda* violation, it would have been inappropriate for the juvenile court to suppress Starling's confession when making its probable cause determination. This is because, as noted above, the admissibility of Starling's confession was not yet ripe for review at the non-adjudicatory probable cause hearing. Therefore, given the facts and circumstances of this case, there is not a reasonable probability that the juvenile court would have granted a motion to suppress at that stage of the proceedings.

{¶ 34} Starling's First Assignment of Error is overruled.

**Second Assignment of Error**

{¶ 35} Under his Second Assignment of Error, Starling challenges the juvenile court's probable cause determination that was made pursuant to R.C. 2152.12(A)(1)(a)(i). Specifically, Starling argues that the juvenile court's decision finding probable cause to believe that he murdered H. and tampered with evidence should be reversed because said finding was not supported by sufficient evidence and was against the manifest weight of the evidence. We disagree.

{¶ 36} "[A] juvenile court's probable-cause determination in a mandatory-bindover proceeding involves questions of both fact and law, and thus, we defer to the trial court's determinations regarding witness credibility, but we review de novo the legal conclusion whether the state presented sufficient evidence to demonstrate probable cause to believe that the juvenile committed the acts charged." *A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, at ¶ 51.

{¶ 37} " '[T]he state must provide credible evidence of every element of an offense to support a finding that probable cause exists to believe that the juvenile committed the offense before ordering mandatory waiver of juvenile court jurisdiction pursuant to [R.C. 2152.12(A)(1)(a) ].' " *Id.* at ¶ 42, quoting *Iacona*, 93 Ohio St.3d at 93, 752 N.E.2d 937. " 'In meeting this standard the state must produce evidence that raises more than a mere suspicion of guilt, but need not provide evidence proving guilt beyond a reasonable doubt.' " *Id.*, quoting *Iacona* at 93. In other words, "the standard of probable cause is a fair probability, not a prima facie showing, of criminal activity." (Citations omitted.) *State v. Grimes*, 2d Dist. Greene No. 2009-CA-30, 2010-Ohio-5385, ¶ 16.

{¶ 38} As previously noted, Starling was charged in the juvenile court with

committing acts that, if committed by an adult, would constitute murder in violation of R.C. 2903.02(A) and tampering with evidence in violation of R.C. 2921.12(A)(1). A person commits the crime of murder when he purposefully causes the death of another. R.C. 2903.02(A). A person commits the crime of tampering with evidence when the person "know[s] that an official proceeding or investigation is in progress, or is about to be or likely to be instituted" and "conceal[s], or remove[s] any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]" R.C. 2921.12(A)(1).

{¶ 39} In an effort to establish probable cause for the charges against Starling, the State presented the testimony of Detective Ronald Jordan and Sergeant Jeffrey Flores of the Springfield Police Department. The State also presented the testimony of Dr. Mary Elizabeth Goolsby of the Coroner's Office. In addition, the State presented a video recording of the second interview Starling had with detectives and the written *Miranda* waiver signed by Starling. The State also presented photographs of Starling's residence, H.'s deceased body, the murder weapons, and H.'s autopsy.

{¶ 40} At the probable cause hearing, Detective Jordan testified that he conducted Starling's second interview and that Starling confessed to killing H. Both the video recording of the second interview and Jordan's testimony establish that Starling told Jordan he entered H.'s bedroom, grabbed a baseball bat, and struck H. in the head 14 to 15 times while H. was lying in bed asleep. After Starling admitted to hitting H. with the baseball bat, Starling told Jordan that H. began making a weird sound. In order to stop the sound, Starling told Jordan that he went into the kitchen, grabbed a knife from the butcher block, and stabbed H. in the neck two or three times.

**{¶ 41}** Following the stabbing, Starling told Jordan that he climbed out of H.'s bedroom window and placed the baseball bat over a fence in the backyard. From there, Starling informed Jordan that he climbed back through H.'s bedroom window and went into the bathroom to clean the knife. Thereafter, Starling also told Jordan that he placed the knife in his computer bag.

**{¶ 42}** To corroborate Starling's confession, the State presented Sergeant Flores, who testified to discovering a baseball bat covered in blood on the other side of a fence located in the backyard of Starling's residence. In addition to Sergeant Flores's testimony, Detective Jordan testified to discovering a knife that appeared to have some blood on it inside Starling's computer bag.[1] Jordan testified that both the baseball bat and the knife were sent to the Bureau of Criminal Investigation for DNA testing and that the test results were pending.

**{¶ 43}** Detective Jordan also testified that he reviewed video footage taken from a surveillance system inside Starling's residence between approximately 9 p.m. and 6 a.m. on the night of H.'s murder. Jordan testified that the video footage showed Starling leaving his bedroom and going toward the area of H.'s bedroom. Jordan also testified that the video footage later showed Starling leaving the area of H.'s bedroom and then entering the bathroom for a significant period of time. Although Jordan testified that he could not see whether Starling was carrying a knife due to the angle of the camera, Jordan nevertheless testified that the video footage was consistent with Starling's confession. Jordan also testified that no other person was seen on the video entering the residence

---

[1] The video evidence indicates that Jordan received Starling's consent to search the computer bag during the interview. Jordan presented a written consent form to Starling, which Starling signed during the interview.

with a baseball bat or other weapon.

{¶ 44} The testimony of Dr. Goolsby, the coroner who performed the autopsy on H.'s body, also corroborated Starling's confession. Goolsby testified that the cause of H.'s death was blunt force injuries to the head and multiple sharp force injuries to the neck. Goolsby testified that the injuries to H.'s head were possibly consistent with being inflicted by a baseball bat and that H. was struck in the head more than twice. Goolsby also testified that the injuries to H.'s neck were possibly consistent with being stabbed with a knife.

{¶ 45} Based on the foregoing evidence, we find that the State presented sufficient evidence of probable cause to believe that Starling murdered H. and tampered with the murder weapon evidence. That is, the evidence presented by the State raised more than a mere suspicion of Starling's guilt. Starling's recorded confession combined with the testimony concerning the bloody baseball bat, knife, surveillance video, and the nature of H.'s injuries indicated that there was a fair probability that Starling committed the criminal acts in question.

{¶ 46} Starling's claim that the probable cause determination was otherwise against the manifest weight of the evidence also lacks merit. "[O]nce the State has established probable cause as to each element of the offense charged, the State has satisfied its burden, and the juvenile court must bindover the case." *State v. Hairston*, 10th Dist. Franklin No. 08AP-735, 2009-Ohio-2346, ¶ 19, citing *A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, at ¶ 46, citing *Iacona*, 93 Ohio St.3d at 93, 95, 752 N.E.2d 937. "[T]he state has no burden to disprove alternate theories of the case at a bindover proceeding." *A.J.S.* at ¶ 61, citing *Iacona* at 96. *Accord, In re R.N.*, 6th Dist.

Lucas No. L-17-1301, 2018-Ohio-5006, ¶ 16.   Rather, "[t]hat question would be reserved for ultimate adjudication by the trier-of-fact at trial in the general division of the common pleas court." *Hairston* at ¶ 19, citing *A.J.S.*   Therefore, based on these principles, a manifest weight analysis has no place in reviewing a juvenile court's probable cause determination.

{¶ 47} Starling's Second Assignment of Error is overruled.


### Third Assignment of Error

{¶ 48} Under his Third Assignment of Error, Starling contends that when his case was transferred back to juvenile court pursuant to *Aalim I*, 150 Ohio St.3d 463, 2016-Ohio-8278, 83 N.E.3d 862, the juvenile court violated his right to due process by delaying his amenability hearing until the Supreme Court of Ohio issued its opinion vacating *Aalim I* in *Aalim II*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883.   Starling also contends that his trial counsel was ineffective in failing to object to the delay.   We disagree.

{¶ 49} In *Aalim I*, the Supreme Court of Ohio declared that due process requires an amenability hearing to be held before any juvenile is transferred to adult court.   *Id.* at ¶ 20, 24-25.   Because the mandatory-transfer statutes, R.C. 2152.10(A) and R.C. 2152.12(A), provide for the automatic transfer of a juvenile to adult court without an amenability hearing, the court in *Aalim I* held that the mandatory-transfer statutes were unconstitutional and severed them.   *Id.* at ¶ 29.   Given the severance of the mandatory-transfer statutes, the Supreme Court indicated that transfers of juveniles previously subject to mandatory transfer may occur pursuant to the discretionary-transfer provisions in R.C. 2152.10(B) and R.C. 2152.12(B) because those provisions require an amenability

hearing. *Id.* at ¶ 27-29.

**{¶ 50}** *Aalim I* was issued approximately one month after the juvenile court initially ordered the mandatory transfer of Starling's case to adult court pursuant to R.C. 2152.12(A). As a result of the Supreme Court's decision in *Aalim I*, the State and Starling filed concurring motions in the adult court that requested Starling's case be remanded back to juvenile court for discretionary transfer proceedings, i.e., an amenability hearing. The adult court granted the motions and remanded Starling's case back to juvenile court.

**{¶ 51}** On remand, the juvenile court issued an entry that reiterated its finding of probable cause and scheduled the matter for an amenability hearing on February 2, 2017. Although Starling had previously undergone a psychological evaluation on the issue of amenability, the State filed a motion to continue the amenability hearing so that Starling could undergo a second psychological evaluation by a different expert. Starling opposed the motion, but the juvenile court ultimately granted the State's request and rescheduled the amenability hearing for March 7, 2017.

**{¶ 52}** Shortly after the continuance was granted, on February 22, 2017, the Supreme Court accepted a motion filed by the State to reconsider and stay the court's judgment in *Aalim I*. Despite the stay of judgment in *Aalim I*, the parties in Starling's case agreed to proceed with the March 7, 2017 amenability hearing. Starling thereafter moved the juvenile court for another continuance of the amenability hearing so that a third psychological evaluation could be conducted. The motion was sustained and the juvenile court continued the amenability hearing to April 6, 2017. Starling then requested a third continuance because his expert could not complete the evaluation by the scheduled hearing date. That request was also sustained, and the amenability hearing

was again rescheduled for May 11, 2017.

{¶ 53} The May 11, 2017 amenability hearing was vacated after both parties agreed to continue the hearing for an additional 60 days. The parties agreed to the 60-day continuance in hopes that the Supreme Court would have by then clarified its position on the mandatory-transfer statutes. Shortly after the parties' agreement, the Supreme Court issued *Aalim II*, which vacated *Aalim I*. The Supreme Court concluded in *Aalim II* that the mandatory-transfer statutes, R.C. 2152.10(A) and R.C. 2152.12(A), were constitutional. *Aalim II*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883 at ¶ 38.

{¶ 54} Following the decision in *Aalim II*, the State moved for the juvenile court to transfer Starling's case back to adult court pursuant to the mandatory transfer provision in R.C. 2152.12(A)(1)(a)(i). Because the Supreme Court affirmed the constitutionality of R.C. 2152.12(A), and because the juvenile court previously found probable cause to believe that Starling had committed the criminal activity charged, the juvenile court granted the State's motion and ordered the transfer of Starling's case back to adult court without holding an amenability hearing.

{¶ 55} As previously noted, Starling claims that the juvenile court's decision to delay the amenability hearing violated his right to due process. " 'The touchstone of due process is fundamental fairness.' " *State v. Salmons*, 2d Dist. Champaign No. 2003CA21, 2004-Ohio-3773, ¶ 11, quoting *State v. Mynhier*, 146 Ohio App.3d 217, 221, 765 N.E.2d 917 (1st Dist.2001), *overruled on other grounds*, *State v. Jackson*, 1st Dist. Hamilton No. C-140384, 2015-Ohio-2171, ¶ 14. "Whether appellant was afforded due process, or fundamental fairness, is highly dependent upon the particular circumstances of the situation." *State v. Crist*, 2d Dist. Montgomery No. CA 9624, 1987 WL 14272, *2

(July 10, 1987).

{¶ 56} Here, the delay in holding Starling's amenability hearing was due to the juvenile court's granting four continuances, two of which were requested by Starling, and one of which was agreed to by the parties. " 'The grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge' " *State v. Harmon*, 2d Dist. Clark No. 09CA0035, 2010-Ohio-836, ¶ 7, quoting *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981), syllabus.

{¶ 57} In exercising its discretion, the juvenile court granted the first three continuances so that the parties could obtain psychological evaluations for the amenability hearing. The fourth continuance was granted so that the parties could await the outcome of *Aalim II*. Under these circumstances, we do not find that the continuances were an abuse of discretion or that they were fundamentally unfair so as to violate Starling's right to due process.

{¶ 58} Starling also claims that his trial counsel was ineffective in agreeing to a 60-day continuance of the amenability hearing for purposes of awaiting the Supreme Court's decision in *Aalim II*. According to Starling, his trial counsel should have objected to any further delay and pushed for the amenability hearing to take place under the authority of *Aalim I*, regardless of the stay that was placed on that judgment. But, as we previously discussed, to prevail on an ineffective assistance claim, a defendant must establish: (1) that his or her trial counsel's performance was deficient and (2) that the deficient performance resulted in prejudice. *Strickland*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, at paragraph two of the syllabus; *Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373, at paragraph two of the syllabus. Starling has established neither, thus his

ineffective assistance claim necessarily fails.

{¶ 59} With regard to deficient performance, the fact that trial counsel agreed to a 60-day continuance of the amenability hearing in hopes that the Supreme Court would have by then clarified its position on the mandatory-transfer statutes was a matter of trial strategy that cannot form the basis of an ineffective assistance claim. *State v. Wynn*, 2d Dist. Montgomery No. 25097, 2014-Ohio-420, ¶ 90, quoting *State v. Warner*, 8th Dist. Cuyahoga No. 95750, 2012-Ohio-256, ¶ 11, citing *State v. Pasqualone*, 121 Ohio St.3d 186, 2009-Ohio-315, 903 N.E.2d 270 and *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263 ("the decision whether to request a trial continuance is debatable, and involves a strategic choice of counsel that falls 'within the realm of trial strategy and tactics that will not ordinarily be disturbed on appeal' "). " 'Debatable trial tactics generally do not constitute a deprivation of effective counsel.' " *State v. Phillips*, 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995), citing *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980). "[T]he fact that there was another and better strategy available does not amount to a breach of an essential duty to [one's] client." *Clayton* at 49.

{¶ 60} With regard to prejudice, Starling cannot establish a reasonable probability that the outcome of his case would have been different had his counsel objected to the 60-day continuance. Despite any such objection, the juvenile court still could have ordered a continuance for the purpose of awaiting the decision in *Aalim II*. Even if such an objection was suatained and an amenability hearing was held, there is nothing in the record to indicate that the juvenile court would have found Starling amenable to the juvenile justice system following such a hearing. Although two out of the three

psychological experts that evaluated Starling opined that Starling was amenable to rehabilitation in the juvenile justice system, that decision was ultimately left to the juvenile court. There was no guarantee that the juvenile court would have reached the same conclusion following an amenability hearing. Therefore, Starling's claim of prejudice rests on mere speculation. It is well established that "[s]uch speculation is insufficient to establish ineffective assistance." *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 119, quoting *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 217. (Other citations omitted.)

{¶ 61} Starling's Third Assignment of Error is overruled.


**Fourth Assignment of Error**

{¶ 62} Under his Fourth Assignment of Error, Starling contends that R.C. 2929.02(B)(1), which imposes an indefinite prison sentence of 15 years to life for murder, is unconstitutional as applied to juveniles. Specifically, Starling argues that R.C. 2929.02(B)(1) violates the Eighth Amendment protection against cruel and unusual punishment because it imposes a specific sentence without regard to the defendant's status and precludes the sentencing court from considering mitigating factors such as the defendant's youth and capacity for change. We disagree.

{¶ 63} As a preliminary matter, we note that Starling forfeited any arguments about the constitutionality of R.C. 2929.02(B)(1) by failing to raise them before the trial court. *Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15. Nevertheless, this court has discretion to consider a forfeited constitutional challenge to a statute under a plain error standard of review. *Id.* at ¶ 16. In such a situation, a defendant must show

"that but for a plain or obvious error, the outcome of the proceeding would have been otherwise, and reversal must be necessary to correct a manifest miscarriage of justice." *Id.*, citing *State v. Davis*, 127 Ohio St.3d 268, 2010-Ohio-5706, 939 N.E.2d 147, ¶ 29.

{¶ 64} Upon review, we find that Starling failed to establish that the trial court committed a plain or obvious error for which a reversal is required to correct a manifest miscarriage of justice.

{¶ 65} In arguing that R.C. 2929.02(B)(1) is unconstitutional, Starling relies on *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012). *Miller* involved two cases wherein two 14-year-old defendants were convicted of murder and sentenced to life in prison without the possibility of parole. *Id.* at 465. Because state law mandated those sentences, the sentencing court did not have any discretion to impose a different punishment. *Id.* The United States Supreme Court found that "such a scheme prevents those meting out punishment from considering a juvenile's 'lessened culpability' and greater 'capacity for change,' and runs afoul of our cases' requirement of individualized sentencing for defendant's facing the most serious penalties." *Id.*, quoting *Graham v. Florida*, 560 U.S. 48, 68, 74, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). As a result, the court in *Miller* held "that *mandatory life without parole* for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' " (Emphasis added.) *Id.*

{¶ 66} In *State v. Long*, 138 Ohio St.3d 478, 2014-Ohio-849, 8 N.E.3d 890, the Supreme Court of Ohio followed *Miller* and held that "[a] court, in exercising its discretion under R.C. 2929.03(A), must separately consider the youth of a juvenile offender as a mitigating factor before imposing a sentence of *life without parole*." (Emphasis added.)

*Long* at paragraph one of the syllabus.

**{¶ 67}** Unlike the sentences at issue in *Miller* and *Long*, Starling was not sentenced to life in prison without the possibility of parole. Rather, Starling will be considered for parole after having served 15 years in prison. This court has consistently refused to extend the rationale in *Miller* and *Long* to sentences like Starling's where parole is afforded. *See, e.g.*, *State v. Zimmerman*, 2d Dist. Clark Nos. 2015-CA-62 and 2015-CA-63, 2016-Ohio-1475, ¶ 16-24; *State v. Hawkins*, 2015-Ohio-5383, 55 N.E.3d 505, ¶ 11-16 (2d Dist.); *State v. Jones*, 2d Dist. Montgomery No. 26333, 2015-Ohio-3506, ¶ 1-2. *See also, State v. Terrell*, 8th Dist. Cuyahoga No. 103428, 2016-Ohio-4563, ¶ 12-18.

**{¶ 68}** This court has also rejected the argument that mandatory sentences imposed on juveniles in adult court are invalid as a violation of the Eighth Amendment. *State v. Anderson*, 2d Dist. Montgomery No. 26525, 2016-Ohio-135, ¶ 34 (noting that *Long* did not suggest that "the Eighth Amendment or Article I, Section 9 prohibit any and all mandatory sentences on juveniles tried in adult court"). Accord *Zimmerman* at ¶ 25-26.

**{¶ 69}** Our review of cases decided by both the Supreme Court of Ohio and the United States Supreme Court after *Miller* shows no indication that the holding in *Miller* has been extended to situations like in the present case. Simply put, since Starling is eligible for parole, the holdings in *Miller* and *Long* do not apply. Therefore, because the holdings in *Miller* and *Long* do not apply to the case at bar, Starling has failed to establish plain error for which a reversal is required to correct a manifest miscarriage of justice.

**{¶ 70}** Starling's Fourth Assignment of Error is overruled.

**Conclusion**

{¶ 71} Having overruled all assignments of error raised by Starling, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, J., concurs:

{¶ 72} I disagree with the suggestion that the filing of a motion to suppress at the juvenile court's probable cause stage is always inappropriate or that the juvenile court never has the jurisdiction to rule on such a motion.

{¶ 73} The probable cause hearing preceding a bindover determination in juvenile court is fundamentally different from probable cause determinations for arrest, pre-trial detention, bindover from adult misdemeanor court, grand jury proceedings, etc. The juvenile court has exclusive jurisdiction over children alleged to be delinquent for committing acts that would constitute a crime if committed by an adult and the removal of such allegations to adult court is entitled to a higher level of due process.

{¶ 74} Regardless, I agree on the facts before us that Starling has not shown that his counsel was deficient in not filing a motion to suppress in juvenile court or that such failure, even if deficient, prejudiced him.

DONOVAN, J., concurs:

{¶ 75} I concur in Judge Welbaum's opinion and in Judge Froelich's concurring opinion.

. . . . . . . . . . . . .

Copies sent to:

Andrew P. Pickering
Timothy B. Hackett
Hon. Douglas M. Rastatter